PEOPLE v SWAIN

Docket No. 293350. Submitted April 14, 2010, at Lansing. Decided June 8, 2010 at 9:15 am.

Lorinda I. Swain was convicted by a jury in the Calhoun Circuit Court of four counts of first-degree criminal sexual conduct involving a victim, her adopted son, under the age of 13. Defendant moved for a new trial, claiming that the victim had recanted his trial testimony and that the recantation constituted newly discovered evidence. Defendant also alleged that her trial counsel had rendered ineffective assistance. The court, Conrad J. Sindt, J., denied the motion based on newly discovered evidence and, following a hearing pursuant to *People v Ginther*, 390 Mich 436 (1973), denied the motion based on ineffective assistance of counsel. The Court of Appeals, SAWYER, P.J., and SAAD and BANDSTRA, JJ., affirmed the convictions in an unpublished opinion per curiam, issued February 24, 2004 (Docket No. 244804). Defendant then moved in the trial court for relief from the judgment on the basis of alleged newly discovered evidence and ineffective assistance of trial counsel. The trial court denied the motion, holding that even if the foundational elements for granting a new trial on the basis of newly discovered evidence were met, the newly discovered evidence, if admitted at a new trial, would not cause a different result. Defendant did not appeal that order. Defendant again moved for a new trial, and the trial court denied the motion. The Court of Appeals denied defendant's delayed application for leave to appeal the trial court's order in an unpublished order, entered May 20, 2005 (Docket No. 261667). Defendant, represented by new appellate counsel, again moved for relief from her judgment on the basis of alleged newly discovered evidence, the testimony of two witnesses, that defendant asserted would make a different result at a new trial probable. Defendant also asserted that if the trial court concluded that the evidence could have been discovered at the time of her trial, her prior appellate counsel was ineffective for failing to investigate and present the witnesses' testimony. The prosecution responded and, following an evidentiary hearing, the trial court granted defendant's motion and set aside defendant's convictions. The trial court concluded that the witnesses' testimony was not newly discovered and that defen-

dant's trial counsel could have produced the witnesses at trial or her prior appellate counsel could have raised that claim of ineffective assistance on appeal or in a postconviction motion. The trial court noted that MCR 6.502(G)(1) generally prohibits successive motions for relief from judgment, but MCR 6.502(G)(2) provides limited exceptions for newly discovered evidence and retroactive changes in the law. The court stated that, although the exception for newly discovered evidence did not apply, MCR 6.508(D)(3) provides a limited additional exception when a defendant establishes both good cause for not raising an issue previously and actual prejudice. The court concluded that the failure of defendant's trial counsel to investigate the witnesses and the failure of her prior appellate counsel to pursue the issue of ineffective assistance of counsel could not be characterized as competent strategy. The court held that defendant had established actual prejudice and, but for the error, defendant would have had a reasonably likely chance of acquittal. The court stated that although the prior appellate counsel's failure did not establish good cause, the good-cause requirement should be waived, pursuant to MCR 6.508(D)(3), because, given the witnesses' testimony, there was a significant possibility that defendant was innocent. The Court of Appeals denied the prosecution's application for leave to appeal in an unpublished amended order, entered September 10, 2009 (Docket No. 293350). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted, directing the Court of Appeals to consider whether the successive motion for relief from judgment was barred by MCR 6.502(G) and, if it was, whether defendant's constitutional rights are implicated given that the trial court found a significant possibility that defendant was innocent on the basis of evidence defendant's attorney failed to present at trial. 485 Mich 997 (2009).

The Court of Appeals *held*:

1. MCR 6.502(G)(2) provides that a defendant may only file a successive motion for relief from judgment when there is a retroactive change in the law that occurred after the first motion or there is new evidence that was not discovered before the first motion. Reading the good-cause and actual-prejudice requirements of MCR 6.508(D)(3) as providing a third exception to the general rule of MCR 6.502(G)(1) that a defendant may only file one motion for relief from judgment, as the trial court did, contradicts the clear language of MCR 6.502(G)(2). The good-cause and actual-prejudice requirements of MCR 6.508(D)(3) are not relevant until, and are only relevant if, the court determines that the

successive motion falls within one of the two exceptions of MCR 6.502(G)(2). Therefore, the trial court was required to deny defendant's successive motion once it determined that the witnesses' testimony was not new evidence discovered after defendant's first motion for relief from judgment.

2. The United States Supreme Court has provided that a defendant may have an otherwise barred constitutional claim arising from his or her trial heard on the merits in a federal habeas corpus action if the defendant can make a gateway showing of actual innocence. To satisfy the actual-innocence standard, a defendant must show that it is more likely than not that no reasonable juror would have found the defendant guilty beyond a reasonable doubt. The actual-innocence standard requires a stronger showing than that needed to establish prejudice in an ineffective-assistance-of-counsel claim. Considering all the evidence, old and new, and the fact that the case rested on credibility determinations, defendant did not establish that it is more likely than not that no reasonable juror would have convicted her. Defendant failed to make the gateway showing of actual innocence.

3. Even if defendant had made the necessary gateway showing, it cannot be concluded that defendant's trial counsel was ineffective for failing to investigate the witnesses and present them at trial, and the trial court erred by holding he was. Defendant was not denied the effective assistance of counsel. The order granting defendant's successive motion for relief from judgment must be reversed.

Reversed.

1. MOTIONS AND ORDERS — RELIEF FROM JUDGMENT — CRIMINAL LAW — SUBSEQUENT MOTIONS.

MCR 6.502(G)(2) provides that a criminal defendant may not file a second or subsequent motion for relief from judgment unless the motion is based on either a retroactive change in law that occurred after the first motion or new evidence that was not discovered before the first motion; the good-cause and actual-prejudice requirements of MCR 6.508(D)(3) do not provide a third exception and are not relevant until, and are only relevant if, the court determines that the successive motion falls within one of the two exceptions provided in MCR 6.502(G)(2).

2. CONSTITUTIONAL LAW — HABEAS CORPUS ACTIONS — GATEWAY SHOWINGS — ACTUAL INNOCENCE.

A defendant may have an otherwise barred constitutional claim arising from his or her trial heard on the merits in a federal habeas corpus action if the defendant makes a gateway showing of actual

innocence by showing that it is more likely than not that no reasonable juror would have found the defendant guilty beyond a reasonable doubt.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Susan K. Mladenoff*, Prosecuting Attorney, and *Jennifer Kay Clark*, Assistant Prosecuting Attorney, for the people.

Michigan Innocence Clinic (by *Bridget McCormack* and *David A. Moran*) for defendant.

Before: SAAD, P.J., and HOEKSTRA and MURRAY, JJ.

HOEKSTRA, J. This matter is before us on remand from the Michigan Supreme Court for consideration as on leave granted. *People v Swain*, 485 Mich 997 (2009). On appeal, the prosecution challenges the July 21, 2009, order granting defendant's successive motion for relief from judgment of her four convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a). In its remand order, the Supreme Court specified that we "should address among the issues presented: (1) whether [defendant's] successive motion for relief from judgment in this case was barred by MCR 6.502(G), and (2) if it was, whether defendant's constitutional rights are implicated given that the trial court found a significant possibility that defendant is innocent based on evidence defendant's attorney failed to present at trial." *Swain*, 485 Mich 997. Because we conclude that defendant's successive motion was barred by MCR 6.502(G) and that, despite the motion's being barred, defendant's constitutional rights are not implicated, we reverse.

I. FACTS AND PROCEDURAL HISTORY

Following a jury trial in August 2002 defendant was convicted of four counts of CSC I for engaging in fellatio

with the victim, her adopted son. This Court affirmed defendant's convictions, and the trial court denied two motions for a new trial and a motion for relief from judgment. In 2009, represented by new appellate counsel, defendant filed a second motion for relief from judgment, which was based, in part, on two "newly discovered" witnesses. The trial court, after hearing the testimony of the new witnesses, concluded that there was a "significant possibility" that defendant was innocent of the CSC I crimes, and it granted the motion.

### A. PERTINENT TRIAL TESTIMONY

The victim testified that when he was "[f]ive or six" years old, while in the "young five[]s" class, he lived in a trailer on Nine Mile Road with defendant and his younger brother. Every day before school while defendant helped the victim get dressed, defendant would place her mouth on his penis. According to the victim, his brother was not in the trailer when the sexual abuse occurred, because defendant had sent the brother outside to wait for the school bus. The brother would knock on the trailer door when he saw the school bus coming, and defendant would quickly finish dressing the victim. The brother testified that he and the victim usually watched for the school bus together. He remembered "[l]ike, three or four times" when he waited for the bus by himself. Those times, the brother yelled for the victim when he saw the school bus coming.

Sometime in 1995 or 1996, defendant, the victim, and the brother moved into defendant's parents' house on Oak Grove Road. The three of them slept in one bedroom. The brother slept in one bed, while defendant and the victim shared a second, larger bed.

According to the victim, when he was asleep and defendant, who slept naked, was in bed with him, he would feel "[s]omething wet," like spit, on his penis. This happened "[p]retty much all week."

Both the victim and the brother testified that defendant treated the two boys differently. Defendant treated the victim like a "boyfriend" and the brother like a "slave." She gave the victim more money than the brother, and she made the brother do most of the household chores. She kissed the victim on the lips, but kissed the brother on the cheek or forehead. The brother testified that he never saw defendant do anything bad to the victim.

The victim first disclosed the sexual abuse in June 2001 when his stepmother questioned him about inappropriate contact with a young cousin. The contact involved the victim's tongue, and when the victim's stepmother asked him where he got the idea, the victim responded that defendant had done it to him. The victim admitted that he was afraid of getting in trouble when he was questioned by his stepmother about his contact with the cousin. He explained that he did not tell anyone about the abuse until June 2001 because he did not want defendant to get in trouble. The victim also admitted that he subsequently told relatives on two occasions that defendant had not abused him.

Defendant testified that she did not sexually abuse the victim. She denied that she ever sent the brother outside to wait for the school bus by himself. According to defendant, the victim and the brother waited for the bus inside, and the two boys went outside together when they saw the bus at "Little Willy's" house, two trailers down. Defendant testified that the "neighbor and the bus stop — driver could verify it."

B. PRIOR POSTCONVICTION MOTIONS

In March 2003, defendant, represented by her prior appellate counsel, Patrick O'Connell, moved for a new trial. The victim had recanted his trial testimony, and defendant asserted that the recantation constituted newly discovered evidence. Defendant also claimed that she was denied effective assistance of trial counsel. She argued that her trial counsel was ineffective for failing to list and call Dr. Stephen Miller as an expert regarding the sexual abuse of children to rebut the testimony of the prosecution's expert and for failing to object to numerous instances when inadmissible and prejudicial evidence was presented. The trial court denied the motion for a new trial based on newly discovered evidence and, after holding a *Ginther*[1] hearing, denied the motion for a new trial based on ineffective assistance of counsel.

This Court affirmed defendant's convictions. *People v Swain*, unpublished opinion per curiam of the Court of Appeals, issued February 24, 2004 (Docket No. 244804). The Court rejected defendant's arguments that trial counsel was ineffective for failing to respond to the prosecution's demand for a witness list until seven days before trial; failing to call Dr. Miller as an expert regarding the sexual abuse of children; failing to object to, and even opening the door for, irrelevant and prejudicial testimony; questioning the prosecution's expert on the sexual abuse of children about his opinion regarding whether the victim was abused; failing to object to the expert's testimony that the victim's behavior was consistent with that of sexually abused children; and failing to introduce a videotape of the victim denying the abuse allegations. The Court also rejected

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant's arguments that the testimony of the prosecution's expert exceeded the parameters set forth by the Supreme Court and that the trial court abused its discretion by denying the motion for a new trial based on newly discovered evidence.[2]

In September 2004, defendant, still represented by O'Connell, moved for relief from judgment. The motion was based on several pieces of newly discovered evidence: (1) Deborah Charles, a prison inmate who testified at the trial that defendant confessed to her, had a history of rummaging through other inmates' files to gain knowledge of their cases and had been investigated by the Department of Corrections, (2) the victim and the brother had viewed pornographic photographs and videos, and this was how the victim learned about oral sex, (3) Julia Johnson, the victim's special education teacher from the second and third grades, could have testified that defendant treated the victim differently because of defendant's inadequate methods of disciplining him, and (4) two letters by the victim and the brother that were introduced into evidence at trial were actually written by the boys' stepmother. Defendant also argued that this newly discovered evidence established that her trial counsel was ineffective because counsel had failed to properly investigate and interview potential witnesses. The trial court denied the motion, holding that even if the "foundational elements" of granting a new trial on the basis of newly discovered evidence were met, the newly discovered evidence, if admitted at a new trial, would not cause a different result. Defendant did not appeal the trial court's order.

---

[2] The Court held that the victim's recantation of his trial testimony was cumulative of evidence presented at trial. It noted that defendant's trial counsel elicited testimony from the victim that he had told several family members that the sexual abuse had not occurred.

Defendant moved again for a new trial in February 2005. O'Connell continued to represent defendant. Defendant asserted that the motion presented the "profound question" of whether she would be condemned to prison for the rest of her life when the victim had recanted and admitted that he perjured himself at trial, she and the victim had taken polygraph examinations and each were deemed truthful when they denied the sexual abuse, no physical evidence or testimony corroborated the victim's trial testimony, and she had always maintained her innocence. The trial court denied the motion. It concluded that the motion presented no new evidence that would be admissible at trial and likely to cause a different result. It noted that the victim's credibility had been "fully before the jury," explaining that the jury heard evidence that the victim was hesitant to testify and that he had, on at least one occasion, stated that the allegations against defendant were not true. This Court denied for lack of jurisdiction defendant's delayed application for leave to appeal the trial court's order. *People v Swain*, unpublished order of the Court of Appeals, entered May 20, 2005 (Docket No. 261667).

C. THE PRESENT POSTCONVICTION MOTION

In March 2009, now represented by her present counsel from the Michigan Innocence Clinic, defendant moved again for relief from her judgment of conviction and sentence. The motion was based on newly discovered evidence—the testimony of two witnesses, Tanya Winterburn, who was the school bus driver, and William Risk, a neighbor who rode the school bus with the victim and the brother—that rebutted the prosecution's theory that defendant sent the brother outside to wait for the school bus while she sexually abused the victim.

Affidavits from Winterburn and Risk were attached to the motion. According to Winterburn, the victim and the brother either waited outside for the bus together or ran out the door together to catch the bus. Risk "never saw one of the boys without the other . . . they were always together." He averred that the victim and the brother always ran out of the house together to catch the bus. Defendant also noted that the brother had recanted his trial testimony on that issue.

Defendant argued that this "successive motion for relief from judgment" met the requirements of MCR 6.502(G)(2) because the motion alleged newly discovered evidence. She also argued that the four requirements for granting a new trial on the basis of newly discovered evidence were met. She pointed out that the evidence was newly discovered and had not been discovered at trial because the brother had refused to be truthful and because her trial counsel and her prior appellate counsel had failed to investigate Winterburn and Risk, who had just recently been contacted by her present counsel. Defendant also asserted that the new evidence made a different result at a new trial probable because the evidence established that the sexual abuse could not have occurred as claimed by the prosecution. In the alternative, defendant argued that, if the trial court concluded that the newly discovered evidence could have been discovered at the time of trial, her trial counsel was ineffective for failing to investigate Winterburn and Risk and her prior appellate counsel was ineffective for failing to investigate and raise an issue regarding the trial counsel's failure to investigate and present the testimony of Winterburn and Risk.

The trial court ordered the prosecution to respond to defendant's motion. The prosecution responded by requesting the trial court, pursuant to MCR 6.502(G)(1),

to return the motion to defendant because it was a successive motion for relief from judgment not allowed by the court rules.

After defendant filed an amended motion for relief from judgment, the trial court ordered the prosecution to respond to the merits of the motion, which the prosecution did. It argued that the testimony of Winterburn and Risk did not meet the four criteria for granting a new trial on the basis of newly discovered evidence. In addition, the prosecution claimed that its case did not hinge on the school bus schedule, noting that neither Winterburn nor Risk was present at defendant's parents' house when defendant and the victim shared a bed and the victim would feel something wet on his penis. It also asserted that recanted testimony is to be regarded with great caution and, because the jury was able to see the victim and the brother as they testified and were cross-examined, the trial court should not discount the trial testimony of the victim and the brother when analyzing defendant's motion. The prosecution further argued that the failure of defendant's trial counsel to procure the testimony of Winterburn and Risk at trial did not constitute ineffective assistance of counsel because the testimony would not have made a difference in the trial's outcome. It explained that Winterburn and Risk could not account for every opportunity that defendant had to sexually abuse the victim and that the jury heard evidence that the victim had recantated, was angry with defendant, and disclosed the abuse after he was confronted with his inappropriate contact with a cousin.

The trial court ordered an evidentiary hearing. It stated that an evidentiary hearing was necessary to determine whether reasonable diligence by trial counsel could have led to the discovery of Winterburn and Risk

before trial. The evidentiary hearing would also cover whether defendant's trial counsel and her prior appellate counsel were ineffective. Winterburn and Risk testified at the evidentiary hearing, as did Edwin Hettinger, defendant's trial counsel, and O'Connell, defendant's prior appellate counsel. The victim and the brother also testified, limited to whether they waited for the school bus together.

### 1. EVIDENTIARY HEARING TESTIMONY

Winterburn confirmed that she drove the school bus that picked up the victim and the brother when the boys lived on Nine Mile Road. Risk lived two houses down the road, approximately 250 to 400 feet, from defendant's trailer. The school bus first stopped at Risk's house, and then proceeded to pick up the victim and the brother. Nine Mile Road in front of defendant's trailer and the Risk house was a straight road. Winterburn testified that, even before she stopped the bus at the Risk house, she was able to see the victim and the brother, who were generally waiting for the bus together at the end of defendant's driveway. Winterburn did not remember ever seeing one of the boys without the other. She never saw the brother wait by himself and then run to get the victim when the bus arrived.

Risk testified that he often waited outside for the bus at the end of his driveway. From his driveway, he could see the victim and the brother, if they were waiting for the bus outside. Risk acknowledged that the victim and the brother sometimes waited inside the trailer. Risk did not recall ever seeing the brother wait for the bus and then run to get the victim. He would have noticed if that had been a regular pattern.

Hettinger testified that he had hoped the victim, upon being cross-examined at trial, would admit that the alle-

gations against defendant were false. Otherwise, his trial strategy was to show that the victim was lying. He was surprised by the victim's testimony that, while living on Nine Mile Road, defendant abused him every morning and that the abuse occurred after defendant sent the brother outside to wait for the bus. These specific allegations were not in the police reports or in the victim's preliminary examination testimony. He admitted that the testimony of Winterburn and Risk would have been consistent with his strategy of proving that the victim was lying, but he never had the opportunity to speak with Winterburn and Risk. Hettinger did not learn of Winterburn and Risk until defendant testified that the school bus driver and the neighbor could verify that the brother never waited outside for the bus by himself. He explained that he did not attempt to contact Winterburn and Risk during trial because "it only came up at trial, and with all the testimony and occurrence[s] at trial, it was just one of many." He did not recall "it standing out as so significant . . . to do so."

O'Connell testified that he interviewed defendant on a number of occasions and that, during the interviews, defendant brought up Winterburn and Risk. And he looked into whether Winterburn and Risk could confirm defendant's testimony that she never sent the brother outside to wait for the bus by himself. However, he never spoke with Winterburn. An appointment was made with Winterburn,[3] but O'Connell missed the appointment when he was delayed in court. The meeting was never rescheduled. O'Connell did speak with Risk, and Risk told him that the brother never appeared at the bus stop by himself; the victim and the brother always

---

[3] Winterburn testified that the appointment was made when she contacted O'Connell in October 2003 after learning that her name had been mentioned at defendant's trial.

arrived at the bus stop together. O'Connell did not view Risk's testimony as newly discovered evidence, because the testimony was available to Hettinger before and during trial. He did view Risk's testimony as evidence that Hettinger failed to conduct a proper investigation, and he regretted not lumping Hettinger's failure in with the ineffective-assistance claims that he did raise.

The victim and the brother testified that they waited inside the trailer for the school bus. They both denied that defendant ever sent the brother to wait outside for the bus by himself and that the brother would run back to the house when the bus came.

### 2. THE TRIAL COURT'S RULING

The trial court granted defendant's motion for relief from judgment and set aside her four convictions of CSC I. The court concluded that the testimony of Winterburn and Risk was not newly discovered evidence because, using reasonable diligence, Hettinger could have identified and produced Winterburn and Risk at trial or O'Connell could have raised Hettinger's failure in the form of a claim of ineffective assistance of counsel either on appeal or in a postconviction motion. It explained:

> [Defendant], as proven by her trial testimony, obviously knew of these witnesses. Furthermore, the trial lasted a number of days. There was certainly the opportunity for defense counsel to investigate, assuming he was unaware of them previously, although no investigation occurred. Nor was any request made to the Court during the trial for time to investigate these witnesses. Trial counsel testified at the evidentiary hearing that he made no effort to identify or to investigate and produce these witnesses during the trial.

* * *

This Court has reviewed the police reports [provided by stipulation] and the Preliminary Examination transcript. Trial defense counsel is accurate that the police reports do not contain information similar to the complainant's trial testimony about the alleged manner of commission of the offenses occurring on 9 Mile Road. However, the complainant's testimony at the Preliminary Examination [page 12] clearly refers to acts occurring while waiting for the bus, inviting inquiry about the brother's whereabouts at the time and inviting investigation about corroboration or lack thereof.

And [defendant's] first appellate counsel testified that he identified both witnesses at the time of the previous post-trial motions, that he had contact with both of them at that time, and that [he] knew of their proposed testimony which would contradict [the victim's].

The trial court noted that MCR 6.502(G)(1) generally prohibits successive motions for relief from judgment, but that MCR 6.502(G)(2) provides limited exceptions for newly discovered evidence and retroactive changes in the law. Although the exception for newly discovered evidence did not apply, the trial court stated that "MCR 6.508 provides a limited additional exception when the defendant establishes both 'good cause' for not raising an issue previously and 'actual prejudice'."

The trial court concluded that the matter before it was a claim of ineffective assistance of counsel. It concluded that Hettinger's failure to investigate Winterburn and Risk, as well as O'Connell's failure to pursue any issue concerning Winterburn and Risk, could not be characterized as competent strategy. It opined:

Trial defense counsel testified that his strategy in defending [defendant] was to demonstrate that the complainant was lying, certainly a sound strategy since the only evidence against [defendant] was the complainant's testimony. He admitted that calling these two witnesses would

have been appropriate in carrying out his trial strategy since their testimony would have tended to put in question the accuracy and truthfulness of the complainant's. He offered no viable excuse for not pursuing the matter.

[Defendant's] first appellate counsel testified that his strategy in representing [defendant] was to explore all possible trial errors, including any of defense counsel which he could discover. This is certainly appropriate appellate strategy; this Court can think of no other appellate strategy that meets the requirements of competent representation. [Defendant's] first appellate counsel offered no viable reason for his failure to raise issues concerning these witnesses during his representation.

The trial court further concluded that defendant established "actual prejudice," meaning that but for the error, she would have had a reasonably likely chance of acquittal. It explained:

[T]he People's case against [defendant] consisted entirely of the testimony of [the victim]. There was no other witness to the alleged crime; there was no physical evidence; there was no circumstantial evidence. . . .

. . . These offenses either were committed as [the victim] testified or they were not committed at all, as [defendant] testified. The jury obviously had questions about [the victim's] credibility which explains the extraordinary length of deliberations . . . . The jury deadlocked on one occasion before finally reaching a unanimous decision.

The testimony of Ms. Winterburn and Mr. Risk would clearly have been important to the jury's consideration of [the victim's] credibility. These witnesses' [testimony] would have been the only testimony by independent witnesses which the jury could have utilized to test [the victim's] testimony about events at the very moment he said that these crimes were being committed. And their testimony would have completely contradicted his testimony about the alleged sexual assaults occurring on 9 Mile Road. Their testimony would have been pivotal in the

jury's consideration of whether his testimony, even that portion concerning alleged offenses occurring at his grandparents' home, was credible.

\* \* \*

This Court is mindful that Winterburn's and Risk's testimony does not pertain in any way to the alleged crimes which occurred at the grandparents' home, the second location where [the victim] testified he was sexually assaulted by his mother on numerous occasions. They have no knowledge of what went on there. But this Court is nonetheless convinced that their testimony is so potentially damaging to [the victim's] credibility about the events at 9 Mile Road that the jury would question his credibility as to all the allegations in the entire case.

The trial court noted that the only reason that any issue concerning Winterburn and Risk was not raised in any previous posttrial proceeding was that O'Connell had failed to pursue the matter. While O'Connell's failure did not establish "good cause," the trial court concluded that the "good cause" requirement should be waived, pursuant to MCR 6.508(D)(3), because, given the testimony of Winterburn and Risk, there is a "significant possibility" that defendant is innocent of the CSC I crimes.

The prosecution filed in this Court an application for leave to appeal the trial court's order, which was denied "for lack of merit in the grounds presented." *People v Swain*, unpublished amended order of the Court of Appeals, entered September 10, 2009 (Docket No. 293350). The prosecution then sought leave to appeal in the Supreme Court. In lieu of granting leave to appeal, the Supreme Court remanded the case to this Court for consideration as on leave granted. *Swain*, 485 Mich 997. The Supreme Court directed the Court to consider two specific issues:

The Court of Appeals should address among the issues presented: (1) whether the successive motion for relief from judgment in this case was barred by MCR 6.502(G), and (2) if it was, whether defendant's constitutional rights are implicated given that the trial court found a significant possibility that defendant is innocent based on evidence defendant's attorney failed to present at trial. [*Id.*]

## II. SUCCESSIVE MOTION FOR RELIEF FROM JUDGMENT

The Supreme Court has directed us to consider "whether [defendant's] successive motion for relief from judgment . . . was barred by MCR 6.502(G)[.]" *Swain*, 485 Mich 997. This directive requires us to address whether the trial court erroneously concluded that MCR 6.508(D)(3) provides a "limited additional exception" for when a defendant may file a successive motion for relief from judgment.

Following the evidentiary hearing, the trial court in its written order held that the exception in MCR 6.502(G)(2) for new evidence did not apply because, with reasonable diligence, Hettinger could have discovered Winterburn and Risk and produced them at trial and O'Connell could have raised an ineffective-assistance claim regarding Hettinger's failure. The trial court's analysis was premised on the rule applicable to motions for a new trial based on newly discovered evidence that a defendant is not entitled to a new trial if the defendant, using reasonable diligence, could have discovered and produced the evidence at trial. See *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996). Despite its conclusion that defendant's successive motion was barred under MCR 6.502(G)(2), the trial court held that it could address and decide the merits of defendant's motion. It reasoned that MCR 6.508(D)(3) provides "a limited additional exception" to MCR 6.502(G)'s bar on successive motions for relief from judgment.

On appeal, the prosecution agrees with the trial court's holding that defendant's successive motion was barred by MCR 6.502(G)(2) because it was not based on new evidence. But it argues that the trial court erred by concluding that MCR 6.508(D)(3) provides an additional limited exception for when a defendant may file a successive motion for relief from judgment. It asserts that a trial court may not engage in the analysis contained in MCR 6.508(D)(3) unless the court first determines that the defendant meets one of the two exceptions in MCR 6.502(G)(2) for filing a successive motion. According to the prosecution, once the trial court determined that the testimony of Winterburn and Risk was not new evidence, the trial court was required to deny defendant's successive motion for relief from judgment.

Defendant agrees with the result reached by the trial court. However, unlike the trial court, she claims that MCR 6.502(G)(2) did not bar her successive motion. According to defendant, MCR 6.502(G)(2) refers to "new evidence that was not discovered," as opposed to evidence that *could* have been discovered. Thus, defendant claims that the discoverability of the new evidence is irrelevant to determining whether a defendant's successive motion falls within the new-evidence exception of MCR 6.502(G)(2). Defendant maintains that the testimony of Winterburn and Risk was "new evidence that was not discovered" because her present counsel was the first to interview the two witnesses and learn the details of their prospective testimony.

Defendant further asserts that the trial court did not err by granting her relief from her CSC I convictions because the testimony of Winterburn and Risk created a significant possibility that she is innocent. According to defendant, if the "new evidence that was not discov-

ered" could have been discovered before the first motion for relief from judgment, a defendant is generally not entitled to relief under MCR 6.508(D)(3) because the defendant cannot meet the "good cause" requirement. However, defendant notes that the "good cause" requirement can be waived if there is a significant possibility that the defendant is innocent. She therefore claims that, if a successive motion for relief from judgment is based on new evidence that was not, but could have been, discovered before the first motion for relief from judgment, a defendant is entitled to relief under MCR 6.508(D)(3) only if the evidence creates a significant possibility that the defendant is innocent.[4]

### A. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error. *People v McSwain*, 259 Mich App 654, 681; 676 NW2d 236 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272

---

[4] Defendant also argues that the prosecution has waived the argument that, once the trial court determined that the testimony of Winterburn and Risk was not new evidence, the trial court could no longer consider her successive motion for relief from judgment. Defendant asserts that the prosecution agreed in the trial court that defendant could obtain relief if she met the requirements of MCR 6.508(D)(3). We find no merit to defendant's waiver claim because the prosecution, before it was ordered to respond to the merits of defendant's successive motion, asserted that the motion was improperly before the trial court. This objection to the successive motion was sufficient to preserve the issue for appeal. In addition, the Supreme Court has specifically directed us to consider "whether the successive motion for relief from judgment in this case was barred by MCR 6.502(G)." *Swain*, 485 Mich 997. We are bound to follow the dictates of the Supreme Court. *Werkhoven v Grandville (On Remand)*, 65 Mich App 741, 744; 238 NW2d 392 (1975).

(2008), or makes an error of law, *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006). The interpretation of a court rule is a question of law that is reviewed de novo. *People v Hawkins*, 468 Mich 488, 497; 668 NW2d 602 (2003).

The interpretation of a court rule is governed by the principles of statutory construction. *People v Buie*, 285 Mich App 401, 416; 775 NW2d 817 (2009). The goal of court-rule interpretation is to give effect to the intent of the Supreme Court, the author of the rules. *Id.*; *People v Orr*, 275 Mich App 587, 595; 739 NW2d 385 (2007). We begin with the language of the court rule. *Buie*, 285 Mich App at 416. If the language is clear and unambiguous, further interpretation is neither required nor permitted; the rule must be enforced as written. *Id.*; *Orr*, 275 Mich App at 595. We may not read into an unambiguous court rule a provision not included by the Supreme Court. *Orr*, 275 Mich App at 595.

### B. MCR SUBCHAPTER 6.500

A defendant in a criminal case may move for relief from a judgment of conviction and sentence. MCR 6.502(A). Such motions are governed by MCR 6.500 *et seq.* These rules outline the procedure for how a trial court is to consider a motion for relief from judgment, identify the requirements that a defendant must establish to be entitled to relief, and limit the number of motions that a defendant may file.

A motion for relief from judgment is to be presented to the judge to whom the case was assigned at the time of the defendant's conviction. MCR 6.504(A). The court is required to "promptly examine" the motion and all files, records, transcripts, and correspondence relating to the judgment under attack. MCR 6.504(B)(1). If it is plainly apparent that the defendant is not entitled to relief, the court must deny the motion. MCR 6.504(B)(2). If the court

does not dismiss the entire motion, it must order the prosecution "to file a response as provided in MCR 6.506, and shall conduct further proceedings as provided in MCR 6.505-6.508." MCR 6.504(B)(4).[5]

The court, after reviewing the motion, response, record, and any record expansion, must then decide whether an evidentiary hearing is required. MCR 6.508(B). If it determines that a hearing is not required, the court may rule on the motion for relief from judgment or afford the parties an opportunity for oral argument. *Id.* If the court decides that an evidentiary hearing is required, it shall schedule and conduct a hearing. MCR 6.508(C).

A defendant has the burden to establish entitlement to relief. MCR 6.508(D). Pursuant to MCR 6.508(D)(3), a court is precluded from granting relief if the motion

> alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>
> (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.]
>
> * * *
>
> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

---

[5] MCR 6.505 concerns the appointment of counsel for indigent defendants. MCR 6.506 governs the prosecution's response. MCR 6.507 allows for expansion of the record at the trial court's direction.

The requirement of "good cause" can be established by proving ineffective assistance of counsel. *People v Kimble*, 470 Mich 305, 314; 684 NW2d 669 (2004).

A defendant is only entitled to file one motion for relief from judgment. MCR 6.502(G)(1). However, this rule is not absolute. MCR 6.502(G)(2) permits the filing of a successive motion under two circumstances:

> A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. The clerk shall refer a successive motion that asserts that one of these exceptions is applicable to the judge to whom the case is assigned for a determination whether the motion is within one of the exceptions.

Any successive motion that does not assert one of these two exceptions is to be returned to the defendant without filing by the court. MCR 6.502(G)(1). No appeal of the denial or rejection of a successive motion is permitted. *Id.*

The court rules are silent on the procedure to be used by a trial court for determining whether a successive motion for relief from judgment falls within either of the two exceptions of MCR 6.502(G)(2). However, MCR 6.508(A) provides that "[i]f the rules in this subchapter do not prescribe the applicable procedure, the court may proceed in any lawful manner. The court may apply the rules applicable to civil or criminal proceedings, as it deems appropriate."

### C. ANALYSIS

We begin by addressing the trial court's conclusion that the "good cause" and "actual prejudice" requirements of MCR 6.508(D)(3) provide "a limited additional exception" to the rule prohibiting successive motions

for relief from judgment. We hold that MCR 6.502(G)(2) provides the only two exceptions to the prohibition of successive motions.

MCR 6.508(D)(3), by its own language, applies to successive motions. It provides that if a motion for relief from judgment "alleges grounds for relief . . . which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter," a defendant is not entitled to relief unless the defendant demonstrates "good cause" and "actual prejudice." However, MCR 6.502(G)(2) unambiguously provides that a defendant may only file a successive motion for relief from judgment in two circumstances: (1) there is a retroactive change in the law that occurred after the first motion or (2) there is new evidence that was not discovered before the first motion. Reading the "good cause" and "actual prejudice" requirements of MCR 6.508(D)(3) as a third exception to the general rule that a defendant may only file one motion for relief from judgment, MCR 6.502(G)(1), as the trial court did, contradicts the clear and unambiguous language of MCR 6.502(G)(2). In addition, no part of a court rule should be rendered nugatory. *Johnson v White*, 261 Mich App 332, 348; 682 NW2d 505 (2004). If a defendant could obtain relief on a successive motion by only establishing entitlement to relief under MCR 6.508(D)(3), then the prohibition against successive motions, MCR 6.502(G)(1), and the two exceptions to the prohibition, MCR 6.502(G)(2), would be rendered nugatory.

Because a successive motion for relief from judgment may only be filed if, after the first motion, there is a retroactive change in the law or new evidence is discovered, the "good cause" and "actual prejudice" requirements of MCR 6.508(D)(3) are not relevant until, and

are only relevant if, the trial court determines that the successive motion falls within one of the two exceptions of MCR 6.502(G)(2). Thus, we agree with the prosecution that once the trial court determined that the testimony of Winterburn and Risk was not new evidence discovered after defendant's first motion for relief from judgment, the trial court was required to deny defendant's successive motion.

Our holding, contrary to defendant's assertion, is not inconsistent with *People v Clark*, 274 Mich App 248, 255; 732 NW2d 605 (2007), wherein the Court stated that, in determining whether the defendant was entitled to relief on his successive motion for relief from judgment, "the trial court was required to apply MCR 6.508(D)(3)." The Court made this statement in explaining that, because the trial court did not find that there was a significant possibility that the defendant was innocent, the trial court erred by granting the defendant's motion for relief without requiring the defendant to show good cause for failing to raise the grounds for relief in his direct appeal and previous motions for relief from judgment. *Id.* The issue in *Clark* was whether MCR 6.508(D)(3) requires a defendant who files a successive motion to show good cause for not raising the grounds for relief in his or her direct appeal and in the defendant's previous motions. *Id.* at 251. The issue did not concern MCR 6.502(G). Thus, the Court's statement in *Clark* that "the trial court was required to apply MCR 6.508(D)(3)" is not determinative of the current issue.[6]

As set forth previously, defendant offers an alternative interpretation of the new-evidence exception found

---

[6] Similarly, the Supreme Court's reversal of *People v Williams*, unpublished opinion per curiam of the Court of Appeals, issued December 9, 2003 (Docket No. 244652), rev'd 471 Mich 928 (2004), is of no value. MCR 6.502(G) was not at issue in *Williams*.

in MCR 6.502(G)(2) and, relying on it, argues that the trial court reached the right result. In essence, defendant argues that the discoverability element of the new-evidence test that the trial court relied on is contrary to the plain language of the rule. Rather defendant submits that the proper test is whether a defendant's successive motion is based on "new evidence that was not discovered." Defendant claims that she has satisfied this test because Winterburn and Risk were not interviewed until her present counsel spoke with them. Because an unambiguous court rule is to be enforced as written, *Orr*, 275 Mich App at 595, there is merit to defendant's claim regarding the proper test to be applied. But even if defendant's interpretation of the phrase "new evidence that was not discovered" is correct, we conclude that under that test, defendant's successive motion is barred by MCR 6.502(G)(2) because Winterburn and Risk in fact were discovered before defendant's first motion for relief from judgment.

At trial, defendant testified that the victim and the brother waited inside for the school bus and when the bus stopped at the Risk house, the two boys went outside together to wait for the bus. According to defendant, "the neighbor and the bus stop — driver could verify it." Defendant knew of Winterburn and Risk at trial, and she identified them as two persons who could corroborate her testimony that the brother never waited outside for the bus by himself. Accordingly, Winterburn and Risk, and their potential testimony, were discovered before defendant filed her first motion for relief from judgment.

Inherent in defendant's argument is that evidence is not discovered for purposes of MCR 6.502(G)(2) until the evidence is known by counsel. However, the plain

language of MCR 6.502(G)(2) does not support such a narrow reading of the court rule. But even if defendant is correct, we would not conclude that the testimony of Winterburn and Risk was new evidence. O'Connell testified at the evidentiary hearing that he investigated defendant's claim that Winterburn and Risk could corroborate her testimony. Despite having a scheduled appointment with Winterburn, O'Connell never spoke with her because he was delayed at court and missed the appointment. However, O'Connell did meet with Risk and learned that Risk always saw the victim and the brother wait for the school bus together; Risk told O'Connell that he never saw the brother arrive at the bus stop by himself. Under these circumstances, we conclude that O'Connell knew of the alleged new evidence. Moreover, the evidence was known to O'Connell before defendant filed her first motion for relief from judgment. O'Connell testified that he regretted not including Hettinger's failure to investigate Winterburn and Risk in the ineffective-assistance-of-counsel claim. It was in the September 2004 motion for relief from judgment that defendant argued that Hettinger was ineffective for failing to adequately investigate and interview potential witnesses.

In conclusion, the "good cause" and "actual prejudice" requirements of MCR 6.508(D)(3) do not provide a "limited additional exception" to the general rule prohibiting successive motions for relief from judgment. There are only two exceptions to the general prohibition: the successive motion (1) is "based on a retroactive change in the law that occurred after the first motion for relief from judgment" or (2) is based on "a claim of new evidence that was not discovered before the first such motion." MCR 6.502(G)(2). Only after the trial court has determined that the successive motion falls within one of the two exceptions do MCR 6.508 and the

"good cause" and "actual prejudice" requirements of
MCR 6.508(D)(3) become relevant. Because the evi-
dence on which defendant's successive motion for relief
from judgment was based was not discovered after
defendant filed her first motion for relief, the trial court
was prohibited from granting defendant's motion. Ac-
cordingly, the trial court abused its discretion when it
granted defendant relief from her CSC I convictions.
However, pursuant to the Supreme Court's remand
order, our inquiry is not complete.

### III. CONSTITUTIONAL RIGHTS

The Supreme Court has also directed us to consider,
if defendant's successive motion was barred by MCR
6.502(G)(2), "whether defendant's constitutional rights
are implicated given that the trial court found a signifi-
cant possibility that defendant is innocent based on
evidence defendant's attorney failed to present at trial."
*Swain*, 485 Mich 997. Despite this directive, neither
party specifically identifies a constitutional right of
defendant that is or could potentially be implicated as a
result of defendant's being prohibited from bringing
her successive motion for relief from judgment despite,
as the trial court found, there being a significant
possibility that she is innocent of the CSC I crimes.

However, relying on caselaw from the United States
Supreme Court regarding federal habeas review of
procedurally defaulted claims, defendant does maintain
that the procedural bar of MCR 6.502(G) prohibiting
successive motions for relief from judgment must yield
in cases in which the defendant can show that his or her
constitutional rights were violated and that the defen-
dant is actually innocent. According to the United
States Supreme Court, a defendant may have an other-
wise barred constitutional claim arising from his or her

trial heard on the merits in a federal habeas action[7] if the defendant can make a "gateway" showing of actual innocence. *Schlup v Delo*, 513 US 298, 314-315; 115 S Ct 851; 130 L Ed 2d 808 (1995); *Herrera v Collins*, 506 US 390, 404; 113 S Ct 853; 122 L Ed 2d 203 (1993); see also *House v Bell*, 547 US 518, 536-537; 126 S Ct 2064; 165 L Ed 2d 1 (2006). This "actual innocence" exception is required by the "ends of justice" or, stated differently, to prevent a "miscarriage of justice." *Schlup*, 513 US at 319-320; *Sawyer v Whitley*, 505 US 333, 339; 112 S Ct 2514; 120 L Ed 2d 269 (1992). However, it is not readily apparent that the "actual innocence" exception is rooted in constitutional concerns. See *Sawyer*, 505 US at 339 (stating that the "miscarriage of justice" exception developed from language of a federal habeas statute); *Engle v Isaac*, 456 US 107, 135; 102 S Ct 1558; 71 L Ed 2d 783 (1982) (stating that "[i]n appropriate cases those principles [cause and prejudice] must yield to the imperative of correcting a fundamentally unjust incarceration," but not providing any support or reasoning for the statement). Consequently, it is not clear that the exception for federal habeas review is rooted in constitutional principles. Nonetheless, even assuming that the federal limitation ought to apply in cases in which successive motions are barred by MCR 6.502(G)(2), we conclude that defendant is unable to establish the requisite gateway showing of actual innocence. We also disagree with the trial court's finding that counsel's representation at trial was constitutionally ineffective.

---

[7] Unless a habeas petitioner establishes cause and prejudice, a federal court may not reach the merits of (1) successive claims that raise grounds identical to ones decided in a previous petition, (2) new claims not previously raised, but which constitute an abuse of the habeas writ, and (3) procedurally defaulted claims in which the petitioner failed to follow state procedural rules in raising the claims. *Sawyer v Whitley*, 505 US 333, 338; 112 S Ct 2514; 120 L Ed 2d 269 (1992).

A. ACTUAL INNOCENCE

To satisfy the "actual innocence" standard, a defendant "must show that it is more likely than not that no reasonable juror would have found [the defendant] guilty beyond a reasonable doubt." *Schlup*, 513 US at 327. This standard does not require absolute certainty about the defendant's guilt or innocence. *House*, 547 US at 538. It is, however, a demanding standard and permits review only in "extraordinary" cases. *Id.*; *Schlup*, 513 US at 327.

For obvious reasons, the trial court did not address the actual innocence standard in its order granting defendant's successive motion for relief from judgment. However, it did find that defendant had met the "actual prejudice" requirement of MCR 6.508(D)(3)(b)(i). It reasoned that, because the testimony of the "relatively independent" witnesses Winterburn and Risk was "so potentially damaging" to the victim's credibility, had the testimony been presented at trial, defendant "would have had a reasonably likely chance of acquittal." Defendant maintains that the "actual prejudice" standard is the equivalent of the "actual innocence" standard. The "actual prejudice" requirement is similar to the prejudice standard in an ineffective-assistance-of-counsel claim. See *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). The United States Supreme Court has instructed that the "actual innocence" standard requires "a stronger showing than that needed to establish prejudice" in an ineffective-assistance-of-counsel claim. *Schlup*, 513 US 327 & n 45.

Accordingly, the trial court's conclusion that defendant showed "actual prejudice" does not equate with a finding by the trial court that defendant met the "actual innocence" standard.

The trial court also concluded that, pursuant to MCR 6.508(D)(3), there was a "significant possibility" that defendant was innocent of the CSC I crimes. The trial court made this finding in determining that it was proper to waive the good-cause requirement of MCR 6.508(D)(3). Generally, to relieve a defendant from a judgment of conviction, a defendant must prove "good cause" and "actual prejudice," MCR 6.508(D)(3), but if the trial court concludes that there is a "significant possibility" that the defendant is innocent, the court may waive the "good cause" requirement. The court rule does not define the phrase "significant possibility," nor has this Court or our Supreme Court defined the phrase. However, it is clear from a reading of MCR 6.508(D)(3) that the "significant possibility" standard is a higher standard than the "actual prejudice" standard of MCR 6.508(D)(3)(b)(i). Even without a definition of what constitutes a "significant possibility,"[8] we discern no meaningful distinction between it and the "actual innocence" standard. Thus, for purposes of resolving this issue, we assume that the trial court, when stating that there was a "significant possibility that the defendant is innocent of the crime," essentially found that it was more likely than not that no reasonable juror, hearing the testimony of Winterburn and Risk, would have found defendant guilty beyond a reasonable doubt.

No Michigan case has discussed an appellate court's review of a trial court's conclusion that, under MCR 6.508(D)(3), there is a significant possibility that the

---

[8] Defendant does not advocate any particular definition for the phrase "significant possibility."

defendant is innocent. We find persuasive the United States Supreme Court's statement in *House* that deference is to be given to the trial court's assessment of the evidence, but that the inquiry "requires a holistic judgment about all the evidence and its likely effect on reasonable jurors applying the reasonable-doubt standard." *House*, 547 US at 539 (quotation marks and citations omitted).

Giving deference to the trial court's assessment of the new evidence, the trial court did not err by determining that the testimony of Winterburn and Risk "would clearly have been important to the jury's consideration of [the victim's] testimony." The testimony certainly would have impeached the victim's testimony that defendant sexually abused him every morning after the brother was sent outside to wait for the school bus. But all the evidence, old and new, incriminating and exculpatory, must be considered, *House*, 547 US at 538, and this the trial court failed to do. Of the old evidence, it only considered the testimony of the victim and defendant. When all the evidence is considered, we cannot agree with the trial court that it is more likely than not that no reasonable juror, upon hearing the testimony of Winterburn and Risk, would have found defendant guilty beyond a reasonable doubt.

The testimony of Winterburn and Risk was inconsistent, not only with the victim's testimony, but also with the testimony of defendant and the brother. Defendant testified that the victim and the brother waited inside the trailer for the school bus until they saw the bus at "Little Willy's" house. But Winterburn testified that, even before she arrived at Risk's house, she saw the victim and the brother waiting by the road for the bus. Similarly, while Risk acknowledged that the victim and the brother sometimes waited inside the trailer for the

school bus, he testified that, when he was outside at the end of his driveway waiting for the bus, he would see the victim and the brother waiting for the bus. In addition, the testimony of Winterburn and Risk that they never saw the brother wait for the school bus by himself was inconsistent with the brother's admission that on a limited number of occasions he waited for the school bus by himself. The inconsistencies between Winterburn's and Risk's testimony and the testimony of defendant and the brother could have led a reasonable juror to doubt the credibility of Winterburn and Risk.

Even with the testimony of Winterburn and Risk, the case would remain a credibility determination. And there was evidence that could have led a reasonable juror to believe the victim, at least to the extent that two acts of CSC I occurred at the trailer on Nine Mile Road and at the house on Oak Grove Road. Detective Guy Picketts testified that when he interviewed defendant, he only told defendant that she was being investigated for a CSC complaint involving oral sex and the victim and that defendant then yelled, "I never sucked my kid's dick." A reasonable juror, as the prosecutor argued, may have found defendant's statement to be incriminating, given that Picketts had not informed defendant of the specific allegations. Similarly, a reasonable juror, again as argued by the prosecutor, may have found that defendant's inconsistent statements during the interview with Picketts were evidence of a lack of truthfulness. Moreover, Dr. Randall Haugen, an expert regarding the sexual abuse of children and a counselor of the victim, testified that the victim manifested behavior, such as sexually reactive behavior toward other children, compulsive masturbation, and a hoarding of women's underwear, that was consistent with a child who had been sexually abused. Haugen also

testified that the discovery of a child's sexually inappropriate behavior can lead to a disclosure by the child of prior sexual abuse, and Haugen noted that the victim disclosed the abuse when he was confronted by his stepmother concerning his actions toward a young cousin. Haugen further testified that a sexual abuser of children often grooms or forms a special relationship with the child that might include granting the child special privileges. The victim testified, and his testimony was corroborated by the brother, that defendant treated him better than the brother; defendant treated the victim like a boyfriend, but the brother like a slave. In addition, Haugen testified that children who make false accusations are often not anxious, fearful, or embarrassed when talking of the abuse and that the victim was anxious, fearful, and embarrassed when the victim spoke to him of the abuse.

Considering all the evidence, new and old,[9] and the fact that the case rested on credibility determinations, defendant has not established that, even though the new testimony of Winterburn and Risk contradicted the victim's testimony, it is more likely than not that no reasonable juror would have convicted her. *Schlup*, 513 US at 327. Accordingly, defendant has not made the "gateway" showing of actual innocence.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

However, even if defendant had made the necessary "gateway" showing, we would not conclude that Hettinger was ineffective for failing to investigate Winterburn and Risk and present them as witnesses at trial. We disagree with the trial court's conclusion that Het-

---

[9] The old evidence also included the testimony of Charles, an inmate with defendant at the Scott Correctional Facility, that defendant confessed to performing oral sex on the victim.

tinger rendered ineffective assistance of counsel. "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008) (citation omitted).

The right to counsel guaranteed by the United States and Michigan constitutions, US Const, Am VI; Const 1963, art 1, § 20, includes the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

At the evidentiary hearing, Hettinger testified that he was surprised by the victim's trial testimony that, while the family lived at the trailer on Nine Mile Road, defendant sexually abused him every morning after the brother was sent outside to wait for the school bus. He explained that these two specific accusations were not in the police reports and that the victim had not testified similarly at the preliminary examination. The trial court reviewed the police reports and the victim's preliminary examination testimony. While it found that Hettinger was correct about the police reports, the trial

court concluded that the victim's testimony at the preliminary examination, which referred to defendant's abusing him while waiting for the bus, invited inquiry into the brother's whereabouts during the abuse and investigation into corroboration.

At the preliminary examination, the victim testified, in pertinent part:

> *Q.* Okay. Did there come a time when something happened between you and your mom when you were living at the trailer?
>
> \* \* \*
>
> *A.* Um, yeah, she would always sleep naked with me but not with—but not with [my brother].
>
> *Q.* Okay. Did something ever happen when you were in the bed with your mom?
>
> \* \* \*
>
> *A.* Yeah. She would put her mouth over my private part.
>
> \* \* \*
>
> *Q.* Did it ever happen in the morning?
>
> *A.* Yeah.
>
> *Q.* Tell me about in the morning.
>
> *A.* In the morning she would get me undressed and she would put her mouth over my wiggly.
>
> \* \* \*
>
> *Q.* Okay. Were you getting dressed for school?
>
> *A.* Yeah.
>
> *Q.* Okay. And what would happen?

*A.* I'd be gettin' undressed, she'd put her mouth over my wiggly and then after that she'd put my clothes on [indiscernible] when it almost time to get to the bus.

*   *   *

*Q.* How many times did that happen?

*A.* More than 20.

Knowing the victim's subsequent testimony at trial, one could easily conclude that it would have been prudent for Hettinger to investigate the brother's whereabouts when the abuse occurred. However, counsel's competence is not to be assessed with the benefit of hindsight. *People v Hill*, 257 Mich App 126, 139; 667 NW2d 78 (2003). Considering solely the victim's testimony at the preliminary examination, Hettinger's failure to conduct a pretrial investigation into the brother's whereabouts cannot be said to fall below objective standards of reasonableness. *Frazier*, 478 Mich at 243. The victim's preliminary examination testimony gave no indication that the brother was not in the trailer when the abuse occurred or that corroboration, or a lack thereof, of the brother's whereabouts by a third person would be anything more than marginally relevant to the case.[10]

Hettinger also testified at the evidentiary hearing that he did not learn of Winterburn and Risk until trial. The trial court faulted Hettinger for failing to investigate Winterburn and Risk once he learned of the two potential witnesses. However, Hettinger's failure to investigate Winterburn and Risk during the middle of trial cannot be said to fall below objective standards of reasonableness. *Id.* The testimony of Winterburn and

---

[10] There is no claim that any other aspect of Hettinger's pretrial investigation was inadequate.

Risk was not direct evidence that defendant was innocent of the CSC I charges. Rather, the testimony would have been impeachment evidence; the testimony would have undermined the credibility of the victim's testimony that defendant abused him after sending the brother outside to wait for the bus by himself. Hettinger's trial strategy was to show that the victim was lying. And although presenting the testimony of Winterburn and Risk may have been consistent with that strategy, defendant has not shown that Hettinger's decision to focus on the impeachment evidence that he planned to present and elicit at trial, rather than attempt to identify and locate two new witnesses during the course of trial, was not sound trial strategy. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). Hettinger presented and argued meaningful impeachment evidence from which the jury could have found that the victim was lying. The evidence included the victim's failure to disclose the sexual abuse until he was questioned about his inappropriate actions toward a cousin, his admission that he was mad at defendant, his statements to family members that defendant had not sexually abused him, his differing stories to the forensic interviewer, and the inconsistencies in the testimony of the victim and the brother regarding how often the brother waited for the school bus by himself.

For the above reasons, we conclude that the trial court erred by holding that Hettinger was ineffective for failing to investigate Winterburn and Risk and to present them as witnesses at trial.[11] Defendant was not denied the effective assistance of counsel.

---

[11] Because Hettinger was not ineffective, O'Connell's failure to raise an ineffective-assistance-of-counsel claim regarding Hettinger's failure to investigate Winterburn and Risk did not prejudice defendant's appeal. See *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008). Defendant was not denied effective assistance of counsel on appeal.

IV. CONCLUSION

The Supreme Court, in its remand order, directed us to consider two issues, and we have done so. We concluded that a defendant may not obtain relief on a successive motion for relief from judgment unless the motion falls within either of the two exceptions of MCR 6.502(G)(2). The "good cause" and "actual prejudice" requirements of MCR 6.508(D)(3) do not provide a third exception. Because defendant's successive motion was based on evidence discovered before defendant's first motion for relief from judgment, MCR 6.502(G) barred defendant's successive motion.

Then, pursuant to defendant's argument, we addressed whether defendant can make a showing of actual innocence as articulated by the United States Supreme Court in *Schlup* and *House,* a showing that is predicated on evidence that was not presented at trial because of an alleged constitutional violation, and if so, whether defendant was denied the effective assistance of counsel. We concluded that when all the evidence is considered, defendant cannot establish her actual innocence and that the omission of Winterburn's and Risk's testimony at trial was not the result of ineffective assistance of counsel. Accordingly, we reverse the trial court's order granting defendant's successive motion for relief from judgment.

Reversed.