# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 31, 2020

158819 & (44)(46)

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
          Plaintiff-Appellee,

v

ROBIN EMANUEL HAMMOCK,
          Defendant-Appellant.

SC: 158819
COA: 343893
Wayne CC: 06-014450-FC

_____/

By order of September 20, 2019, the prosecuting attorney was directed to answer the application for leave to appeal the October 23, 2018 order of the Court of Appeals. On order of the Court, the motion for immediate consideration is GRANTED. The answer having been received, the application for leave to appeal is again considered. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the September 15, 2017, May 4, 2018, and May 14, 2018 orders of the Wayne Circuit Court, and we REMAND this case to the Wayne Circuit Court for an evidentiary hearing on the defendant's motion for relief from judgment. The trial court abused its discretion in failing to "carefully consider the newly discovered evidence in light of the evidence presented at trial." *People v Grissom*, 492 Mich 296, 321 (2012). On remand, the trial court shall first assess "whether a *reasonable juror* could find the testimony credible on retrial." *People v Johnson*, 502 Mich 541, 567 (2018). If so, the trial court shall then assess "the effect of the newly discovered evidence in conjunction with the evidence that was presented at the original trial[]," and whether the newly discovered evidence makes a different result probable on retrial. *Id*. at 572. The motion for bond is DENIED.

We do not retain jurisdiction.

CAVANAGH, J. (*concurring*).

I concur in the order remanding this case to the trial court for an evidentiary hearing because defendant's offer of proof identifies evidence that, if believed, would raise serious concerns about his conviction. Further, not only is the offer of proof not incredible on its face, but it offers the possibility of development at an evidentiary hearing such that defendant may be able to establish he is entitled to a new trial under *People v Johnson*, 502 Mich 541 (2018).

The crime at issue is a shooting at 29549 Oakwood Street in Inkster on November 15, 2006. Also relevant is a house at 29613 Oakwood Street. Defendant was charged with

first-degree murder, assault with intent to commit murder, being a felon in possession of a firearm, and possessing a firearm during the commission of a felony. Defendant elected a bench trial, and the court acquitted defendant of first-degree murder but convicted him of second-degree murder as well as the other charges. At defendant's trial, Lemone Pippen[1] testified that he was at 29549 Oakwood in the early morning hours of November 15, 2006, with Claude Lundy. Pippen said that he was invited by Lundy, who lived there, and that they were visiting and drinking. Pippen testified that Roderick Healy and defendant arrived about 20 minutes after he did and that defendant shot both him and Lundy. Pippen told the first police officer on the scene that defendant shot him.

However, there was significant testimony from the police at trial that did not seem to fit Pippen's story. Detective Anthony Delgreco testified that a door to 29549 Oakwood had been "forced." He testified that although the house was generally furnished—it had a couch, dining table, chairs, dressers, beds, and an entertainment center—there were no televisions in the house, nor were there radios or VCRs. Similarly, there was a monitor, keyboard, and mouse for a desktop computer, but the tower was missing.

The police received a phone call regarding a vacant house across the street from 29549 Oakwood, and Detective Delgreco testified that they found property from 29549 Oakwood at another house on the street—29613 Oakwood. The detective said that there was a big-screen television at 29613 Oakwood that the police had identified as coming from 29549 Oakwood. There was also another television, a VCR, and a computer tower, though the record seems unclear as to where these came from. The television that was identified as coming from 29549 Oakwood was "outside the breezeway" of 29613 Oakwood, the computer tower was inside, and the other items were inside the breezeway. Detective Delgreco also testified that he found jewelry at 29613 Oakwood that appeared to be part of a matching set with jewelry from 29549 Oakwood.

The trial court did not resolve the question of how the big-screen television from 29549 Oakwood made its way to 29613 Oakwood, or why other valuable property was in the vacant house, but the court did not think there was enough evidence to support an alternative theory of a robbery:

> Now, the big screen TV that's across the street on the lawn. Maybe it took two people to carry it across. I was surprised. I bought a 32 inch the other day, and the guy in the store put it on his shoulder and walked it out the door. He didn't need any help.
>
> So I don't know whether this big screen TV needed two people to take it. But it's sitting on the lawn. It's left there.

---

[1] This name is spelled in various ways throughout the lower court record.

> The other strange this [sic] is, some of the other stuff from that house is inside of the vacant house. So who's saying anybody is ripping off? Maybe people were just moving. So I can't conclude that there was a robbery here going on. I don't know whether it was one drug house moving to another drug house. I have no idea.

The trial court noted that the prosecution presented cell-tower tracking evidence indicating that defendant was in Inkster, but it expressed deep skepticism of Pippen's testimony:

> And what I see here is maybe that there was something that happened between all of the parties that caused the shooter to react. I don't know what it was. Because the People don't establish the circumstances because Mr. Pippins—and he is the mainstay in this that you have to sink or swim with Mr. Pippins. And Mr. Pippins does say in that first 911 tape, I noticed he doesn't say who shot him. It's not till later that he starts talking about who shot him.

> But I don't consider that as a plan to make up anything. I think he finally figured out, hey, I'm about to die, and he starts talking.

> But his credibility, based on that, based on the fact he's in this house. At one point he says, oh, we went over there to see some girls. Another point he says something different. I don't know.

> And I tried to figure it out because I asked him some questions myself. And he'd say one thing one minute and something else the next minute. And how can you rely on all of those things that he said.

The trial court ended up convinced that defendant had shot Lundy and Pippen. However, the court was not convinced of the exact circumstances, and it convicted defendant of second-degree murder, assault with intent to murder, felon-in-possession, and felony-firearm.

In this motion for relief from judgment, defendant offers the affidavit of Jason Carter. In the affidavit, Carter says he was on Oakwood Street in Inkster on November 15, 2006, and observed several relevant events. Carter says Lundy bought marijuana from him at about 2 a.m., and then Lundy and Pippen went to 29549 Oakwood to break in. Carter says he watched Pippen and Lundy for about 10 to 20 minutes going back and forth from 29549 Oakwood to 29613 Oakwood and taking items such as televisions and VCRs. Carter further says that while Lundy and Pippen were in 29549 Oakwood, a light-blue Lincoln pulled up and a white man got out and went into the house. Carter heard yelling "to the effect of 'what the fuck are you doin' in my house,'" and then Carter heard gunshots. Carter then saw the white man leave the house and drive off in the light-blue Lincoln. Carter says that he was interviewed by Detective Delgreco and that he told the detective

all of the above. Carter says that he knows defendant and that defendant is not the man who drove up in the light-blue Lincoln.

This motion has not made a straight path to this Court, and its journey is worth noting. The judge who rendered defendant's verdict had retired by the time this motion was filed, and the successor judge initially denied the motion for relief from judgment as well as a motion for reconsideration. However, the Court of Appeals remanded for further proceedings. *People v Hammock*, unpublished order of the Court of Appeals, entered July 15, 2016 (Docket No. 331895). On remand, the trial court initially granted an evidentiary hearing, reasoning:

> Viewed in isolation, it is entirely possible to dismiss the underlying circumstances (whether the Complainant and the decedent were committing an active larceny when they befell gunfire), nevertheless, as the Prosecution's case relied upon the Complainant's testimony, corroborated by thin strands of circumstantial evidence, an exculpatory connection between the heart of the Complainant's testimony, and Carter's proposed testimony is undeniable. It further appears that this predecessor Court found the veracity of the Complainant's testimony quite doubtful.

> Thus, this Court finds it necessary to make a "holistic judgment about all the evidence and its likely effect on [a reasonable trier of fact] applying the reasonable-doubt standard." *People v Swain*, 288 Mich App 609, 640; 794 NW2d 92 (2010). As such, and to consider "all the evidence, old and new, incriminating and exculpatory," this Court finds it necessary and prudent to conduct an Evidentiary Hearing, pursuant to MCR 6.508(C). [Alteration in original.]

Then the trial court changed its mind, and decided against taking any testimony. At a hearing on the motion, without defendant present, defense counsel said that he had nothing to say for the record, only that "I do thank you for an opportunity to file a brief if one was necessary in my opinion. I think Judge Michael Talbot did a far better job writing this than I could have."[2] The trial court denied the motion from the bench, saying only:

> All right.

---

[2] This is not explained further, but it may be a reference to the Court of Appeals opinion in defendant's direct appeal. The Court of Appeals affirmed in an unpublished per curiam opinion with a panel which included the Hon. MICHAEL TALBOT. *People v Hammock*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2008 (Docket No. 277672).

The defendant was convicted after a bench trial before Judge Vera Massey-Jones:

> Where the surviving eyewitness Pippens [sic] testified that he called 911 and a family member immediately following the shooting and identified the defendant by name.
>
> At the trial, the defendant attempted to establish an alibi. However his location during the offense was admitted by way of cell tower information.
>
> Judge Jones in here [sic] findings stated that she believed Pippens and that his testimony was corroborated by the defendant's girlfriend and the cell phone tower evidence.
>
> Furthermore, Judge Jones rejected the defendant's theory that Pippens [sic] identification of the defendant as the shooter was fabricated.
>
> The defendant now claims that an unidentified Caucasian male may have committed the crimes as detailed in Jason Carter's signed affidavit.
>
> Considering the factors stated in [*People v Cress*, 468 Mich 678, 692 (2003)], the Court finds that the defendant has failed to show that the new evidence makes a different result probable on retrial. The Court further finds that an evidentiary hearing is not necessary.
>
> The defendant's motion is denied. [Some commas omitted.]

Ultimately, to obtain a new trial with an offer of newly discovered evidence, a defendant must show that:

> "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." [*Johnson*, 502 Mich at 566, quoting *Cress*, 468 Mich at 692.]

A trial court evaluating an offer of newly discovered evidence will first ask "whether a *reasonable juror* could find the testimony credible on retrial." *Johnson*, 502 Mich at 567. In this regard:

> If a witness's lack of credibility is such that *no* reasonable juror would consciously entertain a reasonable belief in the witness's veracity, then the trial court should deny a defendant's motion for relief from judgment. However, if a witness is not patently incredible, a trial court's credibility

determination must bear in mind what a reasonable juror might make of the testimony, and not what the trial court itself might decide, were it the ultimate fact-finder. [*Id*. at 568.]

If the evidence passes this threshold determination of whether a reasonable juror would entertain a reasonable belief in its veracity, analysis continues and the court asks whether the new evidence makes a different result probable on retrial. *Id*. at 571. To answer this question, the court must consider all the evidence that was presented at trial and all the evidence that would be presented on retrial. *Id*. However, this is the burden a defendant must meet to obtain a new trial *after* an evidentiary hearing. Clearly, a defendant does not have to satisfy this burden just *to obtain* the hearing in the first place.

This is certainly not to say that a trial court must grant an evidentiary hearing whenever one is requested. A motion for relief from judgment requesting an evidentiary hearing is properly denied without a hearing if it offers evidence that is not newly discovered, evidence that is cumulative, or evidence that could have been discovered and produced at trial. And certainly an offer of proof might be so weak that it does not offer a realistic possibility that evidence will be presented that would make a different result probable on retrial. However, a defendant does not need to conclusively satisfy the final prong of the newly-discovered-evidence test on pleadings alone just to obtain an evidentiary hearing. An evidentiary hearing is the defendant's opportunity to present the evidence to satisfy the burden. If a defendant could satisfy the burden without a hearing, what would even be the point of holding the hearing?

It seems to me that the trial court in this case abused its discretion by failing to consider the offer of newly discovered evidence in the context of the evidence presented at trial. As the trial court itself initially said, the predecessor court had concerns with Pippen's veracity, and Carter's affidavit directly challenges Pippen's account. Either Carter's affidavit is false, or Pippen's testimony is false. Both cannot be true. Carter's assertion that Pippen and Lundy were breaking into 29549 Oakwood is directly at odds with Pippen's assertions that Lundy lived there and invited Pippen and that Lundy and Pippen were socializing inside the house.[3]

Additionally, Carter's story must be weighed in the context of corroborating police testimony from trial that the door to 29549 Oakwood had been forced open and that valuable property had been removed and placed in 29613 Oakwood. If the police are to be

---

[3] Justice MARKMAN notes that defendant is African-American and the man Carter saw entering and leaving 29549 Oakwood was Caucasian. That is accurate, but by way of clarification, that is not the critical aspect of Carter's story. If Carter is correct that Pippen and Lundy were burgling 29549 Oakwood, then Pippen was lying about a fundamental aspect of his story. That would clearly call the rest of his version of events into question, and his credibility was already tenuous at best with the finder of fact.

believed, and their account has not been challenged, there was strong contemporaneous evidence that a larceny was ongoing when the shooting occurred. The trial court specifically noted this evidence, but there was no evidence at trial to tie the robbery to the shooting, so the court left this unresolved. Carter's version of events connects those loose ends. Pippen's story has some corroboration in his contemporaneous accusation of defendant and cell-phone evidence that seems to put defendant in Inkster. However, this case now seems to present an entirely different analysis than was before the finder of fact, and the trial court erred by failing to take account of these considerations.

Justice MARKMAN points out two ways in which Carter's story is not *yet* corroborated by the record—there is currently no record evidence that Carter had a connection to the neighborhood or that a Caucasian man lived at or owned 29549 Oakwood. That is true, but at this stage there will always be conceivable corroboration that has not yet been presented. Defendant might as easily point out that there is no record evidence that Carter lacked a connection to the neighborhood, or that Lundy lived at 29549 Oakwood. Rather than denying leave, and letting these questions linger unanswered while defendant lingers in prison, it seems to me that we should allow an evidentiary hearing to take place at which the parties can make a record on these matters.

Justice MARKMAN expresses disbelief that Carter was selling marijuana at 2 a.m. when he was 13 years old, that Carter and defendant happened to be incarcerated together eight years later, and that Carter happened upon the Court of Appeals opinion affirming defendant's conviction. In Justice MARKMAN'S view, this version of events "lacks an air of credibility . . . ." And yet, it is true that people in prison run into past acquaintances, that some people serving long prison sentences spend long hours in the law library falling down legal rabbit holes, and that some of those people were selling marijuana at 2 a.m. when they were 13 years old. These experiences are unlike my own, and though I cannot speak for him, they may also be unlike Justice MARKMAN's. But maybe for exactly that reason the judicial function in this matter is not to pass on the credibility of Carter's story, but only to ask "whether a reasonable juror *could* find the testimony credible on retrial," *Johnson*, 502 Mich at 567 (emphasis altered). Justice MARKMAN weighs these and other considerations and is left with "serious questions regarding Carter's affidavit . . . ." Whether or not there are serious questions about Carter's affidavit, Carter's corroborated account raises serious questions about Pippen's account, which sent defendant to prison. And an evidentiary hearing presents the opportunity to answer both sets of questions. At this point, I am not prepared to say that no reasonable juror could believe Carter. Further, the evidentiary hearing in this matter may amount to more than the affiant getting on the stand to repeat the assertions from his affidavit. As discussed earlier, objective and readily ascertainable facts could either corroborate or refute Carter's story. If believed, Carter's story may well make a different result probable on retrial. We know the finder of fact in this case was not entirely convinced by Pippen and could not make sense of facts that Carter's story would put into place. I think the trial court would have been very interested to hear from Carter, and defendant should have the opportunity to present Carter's

testimony.

I appreciate that an evidentiary hearing of this kind is no small thing and that there is a cost to granting a remand. As Justice MARKMAN points out, hearings of this kind consume the time and resources of trial courts and prosecutors. They also consume the time and resources of appellate public defenders who bear the burden of presenting the affirmative case for innocence. For appellate public defenders, hearings of this kind can be the most time- and resource-intensive aspects of their caseloads, and such hearings normally do not occasion a corresponding reduction in workload. However, I disagree with Justice MARKMAN that granting an evidentiary hearing here risks "obscuring serious claims of actual innocence with those that are not," and I find that contention somewhat at odds with his additional concern that a remand here will "send a signal that trial courts must hold evidentiary hearings on almost every occasion on which a defendant submits new evidence in the form of an affidavit signed by a fellow prisoner." A cursory review of this Court's routine orders denying leave to appeal over the past few months reveals many cases in which this Court has denied leave in cases where defendants have offered newly discovered evidence of all sorts.[4] Of course there is also a cost to denying a remand for an evidentiary hearing, in that potentially exonerating evidence is never presented in court, and a claim of actual innocence goes unexplored. That is not to say that Justice MARKMAN does not appreciate this cost. I have every confidence he does, as I have every confidence that lower courts, prosecutors, and public defenders appreciate this cost as well. I do not see the disagreement here as one about whether viable claims of actual innocence should be explored through evidentiary hearings. I believe Justice MARKMAN and I agree they should. The disagreement here is about the offer of proof in this motion, which Justice MARKMAN sees as "less than the thinnest of evidence" and which I see as not only a plausible version of events, but also a version with corroboration from the trial record and with the potential for either further corroboration or refutation at an evidentiary hearing.

BERNSTEIN, J., joins the statement of CAVANAGH, J.

MARKMAN, J. (*dissenting*).

I respectfully dissent from the order remanding this case to the trial court for an evidentiary hearing. Because the affidavit submitted by defendant is, at least in my judgment, incredible, I would deny leave to appeal. More importantly, while I very much share the Court's concern about the incarceration of possibly innocent individuals, I

---

[4] See, e.g., *People v Hubbard*, 944 NW2d 120 (2020); *People v Hawkins*, 943 NW2d 359 (2020); *People v Thompson*, 943 NW2d 112 (2020); *People v King*, 943 NW2d 110 (2020); *People v Smith*, 937 NW2d 663 (2020); *People v Davis*, 944 NW2d 704 (2020); *People v Hudgens*, ___ NW2d ___ (2020) (Docket No 160963); *People v Cherry*, ___ NW2d ___ (2020) (Docket No. 161032).

question whether remanding a case of the instant nature does more harm than good by risking confusion as to what is wheat and what is chaff in that regard.

In 2007, defendant was convicted of second-degree murder, assault with intent to commit murder, possessing a firearm during the commission of a felony, and being a felon in possession of a firearm, stemming from the shootings of Claude Lundy and Lemone Pippen.[5]  The shootings occurred around 2:00 a.m. on a Wednesday in November 2006. Nearly nine years after the shooting, defendant filed the present successive motion for relief from judgment, alleging new evidence in the form of an affidavit from Jason Carter.  In the affidavit, Carter asserts that he was across the street on the night of the shooting and saw a Caucasian male enter the house where the shooting occurred, heard gunshots, and saw the Caucasian male leave the house and drive away.[6]  Carter indicates that the white male resembled someone he believes owned the house in which the shooting occurred.

To obtain a new trial through a successive motion for relief from judgment based on newly discovered evidence,

> a defendant must show that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." [*People v Johnson*, 502 Mich 541, 566 (2018), quoting *People v Cress*, 468 Mich 678, 692 (2003).]

In considering the fourth prong, "a trial court must first determine whether the evidence is credible." *Johnson*, 502 Mich at 566-567.  "If a witness's lack of credibility is such that *no* reasonable juror would consciously entertain a reasonable belief in the witness's veracity, then the trial court should deny a defendant's motion for relief from judgment." *Id*. at 568.  If, however, a reasonable jury could find the new evidence credible, the trial court must consider the evidence presented at trial along with "the evidence that would be presented at a new trial."  *Id*. at 571.

The trial court, without holding an evidentiary hearing, concluded here that Carter's affidavit did not make a different result on retrial probable given the evidence presented at defendant's first trial, including that one of the victims identified defendant as the shooter. "This Court reviews a trial court's decision to grant or deny a motion for a new trial for an

---

[5] This name is spelled in various ways in the lower court record.

[6] Defendant is African-American, the significance of which is that the man who Carter saw entering and leaving the house was not defendant because the person he identified was Caucasian.  Thus, Carter seemingly identified someone other than defendant as having committed the crime.

abuse of discretion." *Id*. at 564. This Court also reviews a trial court's decision regarding whether to hold an evidentiary hearing for an abuse of discretion. See *People v Franklin*, 500 Mich 92, 100 (2017); MCR 6.508(B). " 'An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes.' " *Johnson*, 502 Mich at 564, quoting *Franklin*, 500 Mich at 100.

The Carter affidavit lacks an air of credibility, in my view, in light of the following considerations:

- Carter was incarcerated at the time he signed the affidavit, serving 25 to 30 years' imprisonment for first-degree criminal sexual conduct (CSC) convictions;

- Carter contends he approached defendant in prison after reading about defendant's case on the Lexis/Nexis legal research service, but it is not apparent what caused Carter to read a 2008 per curiam and unpublished decision of the Court of Appeals that involved a murder conviction and not a CSC conviction. See *People v Hammock*, unpublished per curiam opinion of the Court of Appeals, issued September 23, 2008 (Docket No. 277672);

- Carter was 13 years old at the time of the shooting, raising considerable doubt about his contention that he was coincidentally in the area of the crime at 2 a.m. on a Wednesday and that he knew one of the victims because he had sold marijuana to him a few hours prior to the shooting;

- No facts in the record tie Carter to the neighborhood in which the shooting occurred, circa 2006; and

- No facts in the record corroborate Carter's allegation that a Caucasian male owned or lived in the house in which the shooting occurred.

Affidavits by prisoners are typically viewed with a measure of skepticism, particularly when the affiant himself is serving lengthy sentences for felony convictions. The incredible scenario of Carter witnessing the murder at 2 a.m. on a Wednesday when he was 13 years of age, many years later reading about defendant's case on Lexis, and then being coincidentally housed in the same correctional facility as defendant some eight years after the murder merely add to the skepticism with which a jurist should reasonably view Carter's affidavit. Standing alone, any one of these considerations may not preclude a reasonable juror from finding Carter's testimony credible on retrial. However, when considered together, they raise serious questions regarding Carter's affidavit such that, in my judgment, it was hardly outside the range of reasonable outcomes, i.e., it was no "abuse of discretion," for the trial court to conclude that the affidavit was of little or no probative value-- that Carter's testimony at a new trial would not have made a different outcome probable. Accordingly, I would deny leave to appeal.

My disagreement with a single order remanding a case for an evidentiary hearing ordinarily would not cause me to write separately. Furthermore, during my time on the Court, I have often shared the concern of colleagues regarding the incarceration of innocent persons. To that end, I joined the majority opinion in *Johnson* and also joined in recent reforms that afford more opportunity for allegedly innocent persons to challenge their convictions. However, concern for incarceration of the innocent and remanding for evidentiary hearings on less than the thinnest of evidence are not one and the same. While I do not quarrel with the idea that this Court should view "actual innocence" claims in a receptive manner where a substantial question as to a defendant's innocence has been raised, there nonetheless must be some reasonable threshold standard for determining which cases are entitled to such a hearing. The instant case is but one of several recent instances in which, in my view, we have remanded for an evidentiary hearing on the basis of an affidavit of highly-questionable veracity by a fellow prisoner. See, e.g., *People v Vick*, 941 NW2d 55 (2020); *People v Hailey*, 941 NW2d 50 (2020). And remands in cases of this nature do not come without cost, either in terms of the expenditure of the limited time and resources of trial courts and prosecutors or, even more importantly, in terms of the risk of increasingly obscuring serious claims of actual innocence with those that are not. Cases of this sort send a signal that trial courts must hold evidentiary hearings on almost every occasion on which a defendant submits new evidence in the form of an affidavit signed by a fellow prisoner. And if that is the message we intend, I fear that such lowering of the bar in support of new evidentiary hearings-- perhaps many years after the commission of the offense and the presentation at trial of the evidence-- is not only incompatible with the Court's new rules and incompatible with our traditional standards of appellate review of the trial courts, but, most grievously, risks burying potentially meritorious claims of innocence among claims based on far-fetched, incredible, and uncorroborated prisoner affidavits.

ZAHRA, J., joins the statement of MARKMAN, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 31, 2020



Clerk

t0728p