*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

UNPUBLISHED
June 10, 2021

v

No. 353296
Macomb Circuit Court
LC No. 2005-003245-FC

ANTHONY JEROME DELEON,

      Defendant-Appellee.

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

The prosecution appeals by leave granted[1] the trial court's order granting defendant a new trial under MCR 6.500 *et seq.*, following a *Ginther*[2] hearing. We reverse.

## I. FACTUAL BACKGROUND

This Court described the facts of this case in a prior appeal:

Defendant's convictions arise from the April 1998 shooting death of his wife, Karen DeLeon, who died from a single gunshot wound to the head. Police found several bags packed with the woman's clothing. Defendant claimed to be present at the time of the shooting and further claimed to hold his wife closely right after the shooting, but police found him clean and emotionless when they arrived at the scene. Shortly after the shooting, the medical examiner certified the manner of death as "undeterminable." A toxicology report indicated that the decedent had consumed a large, possibly fatal, amount of Butalbital. The police file was closed in June 1998, because the police determined that there was no direct evidence that the decedent's death was anything other than a suicide. Much of the physical

---

[1] *People v DeLeon*, unpublished order of the Court of Appeals, entered July 31, 2020 (Docket No. 353296).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

evidence was destroyed, including the decedent's numerous prescription medications and the clothing she was wearing at the time of her death. The case was later reopened in 2002, after defendant assaulted his live-in fiancée by wrestling her to the floor and telling her he was going to kill her. The assault was precipitated in large part by the fiancée's communication of her desire to end the relationship. In June 2005, defendant was charged with first-degree murder in connection with the decedent's death.

Testimony indicates that, at least in retrospect, some witnesses believed that defendant acted suspiciously on the night his wife died. There was also evidence that the decedent had a history of prescription drug abuse and a previous suicide attempt. Although testimony at trial portrayed defendant as controlling and insensitive toward the decedent, no one ever saw him physically assault the decedent, and she never complained to anyone of physical abuse. Evidence of defendant's 2002 assault of his fiancée was presented at defendant's trial. [*People v DeLeon*, unpublished per curiam opinion of the Court of Appeals, issued September 18, 2007 (Docket No. 269574), pp 1-2.]

Defendant was convicted of first-degree murder and possession of a firearm during the commission of a felony. Defendant appealed his convictions and this Court affirmed. *Id*. at 4.

In 2018, defendant sought relief from judgment on the basis of the ineffective assistance of his trial counsel, Salvatore Palombo, for failing to call Dr. Herbert MacDonell as an expert witness. The trial court granted defendant a *Ginther* hearing to permit him the opportunity to establish a factual predicate for his claim. Following the *Ginther* hearing, the trial court agreed with defendant's contention that Palombo was ineffective and granted defendant a new trial. The prosecution now appeals.

## II. THE LAW-OF-THE-CASE DOCTRINE

The prosecution first argues the trial court erred by considering defendant's request for relief from judgment because the law-of-the-case doctrine precluded such relief. We disagree.

We review de novo whether the law-of-the-case doctrine applies. *Kasben v Hoffman*, 278 Mich App 466, 470; 751 NW2d 520 (2008). Under the law-of-the-case doctrine, "an appellate court's decision regarding a particular issue is binding on courts of equal or subordinate jurisdiction during subsequent proceedings in the same case." *People v Herrera*, 204 Mich App 333, 340; 514 NW2d 543 (1994). "The law[-]of[-]the[-]case doctrine is a general rule that applies only if the facts remain substantially or materially the same." *People v Phillips (On Second Remand)*, 227 Mich App 28, 31-32; 575 NW2d 784 (1997).

During defendant's direct appeal, the only facts available to the Court were that Palombo did not call Dr. MacDonell and that Palombo told the trial court Dr. MacDonell left town suddenly and could not be reached. *DeLeon*, unpub op at 3-4. On October 10, 2016, however, Dr. MacDonell signed an affidavit asserting that he left town because Palombo told him his testimony would not be needed. Because this Court relied on Palombo's uncontested assertion at trial that Dr. MacDonell had to leave town suddenly in resolving defendant's ineffective assistance of

counsel claim on direct appeal, *id.* at 4, Dr. MacDonell's affidavit constitutes a material change in facts. Therefore, the law-of-the-case doctrine did not preclude the trial court from considering defendant's claim. *Phillips*, 227 Mich App at 31-32.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

The prosecution also argues the trial court erred by finding Palombo was ineffective. The prosecution's argument is essentially that the trial court erred by concluding Palombo's testimony at the *Ginther* hearing suggested his failure to call Dr. MacDonell was not a matter of sound trial strategy. We agree.

We review a trial court's findings of fact regarding a motion for relief from judgment for clear error and the trial court's ultimate decision on the motion for an abuse of discretion. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made." *People v Dendel*, 481 Mich 114, 130; 748 NW2d 859 (2008), amended 481 Mich 1201 (2008) (quotation marks and citation omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes or makes an error of law." *Swain*, 288 Mich App at 628-629 (citations omitted).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Dendel*, 481 Mich at 124 (quotation marks and citation omitted). The trial court's factual findings on a claim of ineffective assistance of counsel are reviewed for clear error, but we review de novo whether a particular act or omission fell below an objective standard of reasonableness under prevailing professional norms and whether defendant was prejudiced as a result. *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012); see also *Dendel*, 481 Mich at 124.

A criminal defendant may move for relief from a judgment of conviction and sentence under the provisions of MCR 6.500 *et seq. Swain*, 288 Mich App at 629. The defendant bears the burden of establishing he or she is entitled to relief. MCR 6.508(D). Further, a court may not grant relief from judgment if the defendant:

> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter . . .

> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

>> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and

>> (b) actual prejudice from the alleged irregularities that support the claim for relief. [MCR 6.508(D).]

"The requirement of 'good cause' can be established by proving ineffective assistance of counsel." *Swain*, 288 Mich App at 631.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20; US Const, Am VI. "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. To obtain relief on the basis of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "[A] defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id*. at 52. Further, "the failure to call a particular witness at trial is presumed to be a matter of trial strategy, and an appellate court does not substitute its judgment for that of counsel in matters of trial strategy." *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009).

Near the end of the seventh day of defendant's trial on January 19, 2006, Palombo informed the trial court he still had several witnesses to call, including Dr. MacDonell. Shortly thereafter, Palombo told the court: "Apparently Dr. [MacDonell] had an emergency and his wife is now in the hospital and he—I haven't talked to him directly, but he tells me that he's got to get on a plane and leave." The court suggested the issue could be dealt with the next day, perhaps by permitting Dr. MacDonell to testify by phone. The next day, after calling another witness, the following conversation took place:

> [*Palombo*]: We have not been able to get in contact with Dr. [MacDonell] who was going to be our next witness. His wife had an emergency. He flew out abruptly last night.
>
> *The Court*: Well, that's fine, Mr. Palombo. Call your next witness.
>
> [*Palombo*]: At this point the defense rests after we address the issue of the medical records, your Honor.
>
> *The Court*: Oh, I'm sorry. I interrupted you. I presumed you had other witnesses. Mr.—so you won't be calling Dr. [MacDonell]?
>
> [*Palombo*]: I will not be calling any further witnesses . . . .

Subsequently, at the *Ginther* hearing on November 8, 2019, Palombo asserted that he decided not to call Dr. MacDonell because he believed he had created reasonable doubt with the expert witnesses he had already called, and he knew the prosecution had its own expert witness standing by to testify in contrast to Dr. MacDonell regarding certain blood evidence. According to Palombo, he was not only worried about the prosecution's witness degrading the defense that had already been made, but he did not want the prosecution's expert witness to be the last one heard by the jury before it began deliberating. Palombo testified that he discussed this decision with defendant and defendant agreed. However, Palombo asserted that he never told Dr. MacDonell he would not be called to testify. Defendant testified that the first he heard Dr. MacDonell would not be called to testify was when Palombo rested for the defense.

The trial court found that Palombo's testimony at the *Ginther* hearing was "somewhat inconsistent" and contradictory to the representations he made to the trial court during defendant's trial. The court further found Palombo dismissed Dr. MacDonell on January 19, 2006, without consulting with defendant, and that Palombo "may have been mistaken" when he told the court and defendant on January 20, 2006, that Dr. MacDonell would not be called because of a family emergency. After making the above findings, the trial court stated:

> Considering the record as a whole, the [trial c]ourt finds that the failure to call Dr. MacDonell as a witness may not have been a strategic decision, and that Palombo's representations to the [trial c]ourt and to [defendant], as well as his failure to keep [defendant] informed of the status of a key expert witness, leads to the conclusion that Palombo's performance fell below an objective standard of reasonableness.

The court noted that the consequence of Palombo's deficient performance was the inability to present Dr. MacDonell's testimony. In light of the circumstantial nature of the prosecution's case, the trial court concluded defendant was prejudiced by Palombo's deficient performance. Dr. MacDonell was prepared to explain how gunshot residue and blood evidence strongly supported the conclusion that Karen committed suicide, and there was a reasonable probability that such testimony would have affected the outcome of the proceedings.

We disagree, and conclude that Palombo's decision not to call Dr. MacDonell was a matter of trial strategy.

When this Court heard defendant's claim of ineffective assistance on direct appeal, the record suggested Palombo's failure to call Dr. MacDonell was a matter of time management and the ordering of witnesses. *DeLeon*, unpub op at 4. It appeared that Palombo intended to call Dr. MacDonell, but because of Dr. MacDonell's family emergency *and* the fact that Palombo called other experts before him, Palombo lost the opportunity to call Dr. MacDonell. *Id*. Following the Ginther hearing, however, the trial court concluded that Palombo intentionally dismissed Dr. MacDonell on January 19, 2006, without consulting with defendant. Be that as it may, the trial court has failed to further explain the conclusion that this decision was not a matter of trial strategy. It appears the trial court's finding that Palombo misled it and defendant at trial clouded the trial court's analysis of defendant's ineffective assistance claim.

Undoubtedly, Palombo's misstatement about Dr. MacDonell during trial was improper. MRPC 1.4(a) (obligation to keep a client reasonably informed about the status of a matter); MRPC 3.3(a) (candor toward the tribunal); MRPC 8.4(b) (conduct involving dishonesty, fraud, deceit, or misrepresentation). And, while we do not diminish how inappropriate it was for Palombo to mislead the trial court and defendant about his reasons for not calling Dr. MacDonell to testify, that act does not permit us to substitute our judgment *on the decision of whether to call Dr. MacDonell*, the only decision that is alleged to have affected defendant's trial. *Seals*, 285 Mich App at 21. To put it simply, Palombo offered numerous reasons that he did not call Dr. MacDonell, in addition to the fact that Dr. MacDonell had a family emergency. Palombo believed the trial had gone well without Dr. MacDonell's testimony, and he knew the prosecution had a rebuttal expert that was prepared to testify if Dr. MacDonell did. Palombo was not only concerned about what damage the prosecution's rebuttal expert would do to defendant's defense, he was also concerned

about the prosecution's expert being the last the jury heard before it began deliberating. We believe this was sound trial strategy. See *Trakhtenberg*, 493 Mich at 52.

For these reasons, defendant did not carry his burden of establishing deficient performance on the part of Palombo. Because defendant did not demonstrate deficient performance, he cannot establish he was denied the effective assistance of counsel. *Trakhtenberg*, 493 Mich at 51. Since defendant cannot establish he was denied the effective assistance of counsel, defendant cannot establish good cause for relief under MCR 6.508(D)(3)(a), and the trial court's decision to grant him a new trial was therefore an abuse of discretion. *Swain*, 288 Mich App at 628-629.

Reversed.

/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh