*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

BILLIE DESHAWN MCKINNEY,

      Defendant-Appellant.

UNPUBLISHED
February 1, 2024

No. 364289
Kent Circuit Court
LC No. 2013-009813-FC

Before: REDFORD, P.J., and RIORDAN and FEENEY, JJ.

PER CURIAM.

Defendant, Billie DeShawn McKinney, appeals by delayed leave granted[1] the trial court's order denying his successive motion for relief from judgment pursuant to MCR 6.502(G)(2). We reverse and remand to the trial court for consideration of defendant's successive motion for relief from judgment.

## I. FACTS

In March 2014, defendant was convicted of assault with intent to murder, MCL 750.83; possession of a firearm during the commission of a felony, MCL 750.227b; and carrying a concealed weapon, MCL 750.227, for a shooting that occurred at a house party. A panel of this Court summarized the shooting and the evidence presented at trial:

> On that date, Alicia Martin, a recent high school graduate, hosted a party to celebrate her graduation. The party was held in her backyard, where there was an above-ground pool enclosed by a deck. Martin testified at trial that she only invited approximately 50 friends, but word of the party quickly spread to others and by 10:00 or 11:00 p.m., there were approximately 150 people at the house. According

---

[1] *People v McKinney*, unpublished order of the Court of Appeals, entered May 8, 2023 (Docket No. 364289).

-1-

to multiple witnesses, among the partygoers was a group of individuals known to be associated with a local gang called "Bouldercrest."

Multiple witnesses testified at defendant's trial. While each witness's account of the events varied slightly, the majority consistently testified that around 11:30 p.m., a group of between six and ten individuals arrived at the party and entered the backyard. Included in this group was defendant. According to multiple witnesses, several of these individuals, including defendant, were associated with the "Bemis" gang, another local gang and a rival of the "Bouldercrest" gang. From the moment the "Bemis" gang entered the backyard, there was "conflict." According to various witnesses, members from the "Bemis" gang, who were then standing near the stairs to the pool deck, began yelling at members of the "Bouldercrest" gang, who were standing on the deck. At some point, defendant was punched and fell to the ground. A fight then ensued between defendant and other members of his gang and members of the "Bouldercrest" gang. During the fight, gunshots erupted on the pool deck. Several people were injured, including two members of the "Bouldercrest" gang and an innocent bystander.

Witness identifications of the shooter varied; however, several witnesses recalled that the shooter was wearing an orange, "orangish," or "bright" shirt, which matched the description of the shirt defendant was wearing that night. Moreover, at least one witness identified the shooter as the same individual who had earlier been punched. Finally, several witnesses specifically identified defendant as the shooter. As a result of eyewitness identifications, defendant was eventually arrested. While in the Kent County jail, defendant made incriminating statements about the shooting to a fellow inmate, Jacqte Beal, some of which were recorded by Beal while he was wearing a recording device. Specifically, among other things, defendant admitted being one of two shooters and identified the type of weapon he used. Defendant also elicited Beal's help in sending a letter to defendant's girlfriend, Sierra Wyant, in which he asked Wyant to provide an alibi for defendant. The letter, along with portions of the recorded conversation between defendant and Beal, were admitted at defendant's trial. [*People v McKinney*, unpublished per curiam opinion of the Court of Appeals, issued September 10, 2015 (Docket No. 321843).]

This is defendant's second motion for relief from judgment in this Court. In May 2017, defendant filed his first motion for relief from judgment. In his first motion, defendant asserted that he was entitled to relief from judgment because (1) his right to be present at trial was violated; (2) his trial counsel improperly waived his right to a speedy trial; (3) he fired his trial counsel before trial; (4) the prosecution failed to show sufficient evidence of intent to kill; (5) trial counsel failed to investigate a favorable witness; and (6) defendant's sentence was premised on improper judicial fact-finding. The trial court denied defendant's motion because each of these arguments lacked merit. This Court and our Supreme Court denied defendant's delayed application for leave to appeal the trial court's denial of his motion for relief from judgment. *People v McKinney*, unpublished order of the Court of Appeals, entered April 18, 2018 (Docket No. 341650); *People v McKinney*, 503 Mich 913 (2018)

In July 2022, defendant filed a successive motion for relief from judgment. Defendant premised this motion on two affidavits. The first affidavit was an October 2021 affidavit written and sworn by Jacqte Beal, who testified against defendant at trial. In his affidavit, Beal averred, in pertinent part, as follows:

> 2. I was incarcerated at the Kent County Jail with Billie McKinney during the time he was awaiting trial.
>
> 3. In 2011 my little brother Courtney Tillman was murder [sic], supposedly by Billie and a guy name [sic] Wyoming. I wanted to get Billie to admit to me about my brother's murder but he wouldn't talk about it.
>
> 4. I made up in my mind that I was gonna get him even with a lie. I contacted the police and told them I had info on his case. They came and seen me and told me to gather info on him. They also told me that yes he was a suspect in my brother's murder.
>
> 5. I convinced Billie to write a letter and I pretty much told him what to write. They got the letter from me. Then they told me to wear and [sic] electronic device but it wasn't Billie talking but a 3d part [sic] who was in the cell with us.
>
> 6. After awhile I began to feel guilty about what I done so I tried to tell them and pull out but the prosecutor threatened me with perjury and giving me a bunch of time for my unarmed robbery case. Then they said they would get me out of jail if I testified.
>
> 7. I am signing this affidavit because I am sorry for lying on Billie about this crime.

Along with Beal's affidavit, defendant presented an affidavit from a "corroborating witness," Eric Scott. Scott first signed this affidavit in 2017 and then signed a similar affidavit in October 2021. In the 2017 affidavit, Scott averred:

> 1. I was incarcerated with Jacqte Beal, also known as "Tae" in 2016, throughout our time together we had many conversations about the neighborhood, family, prison and life in general; Beal knew a lot of my family members;
>
> 2. I told Beal that I was serving a 15[-]year sentence but I wanted to know if the Court has sentenced me properly or could I get a reduced sentence, Beal told me the only way I could get a lesser sentence considering that I already plead [sic] guilty, was to be a witness for the prosecutor;
>
> 3. Beal then asked me if I could keep a secret, and I said yes, then he told me how he got a one[-]year sentence for armed robbery by testifying falsely against Billie McKinney;
>
> 4. Beal said that he gathered alot of information on Mckinney's case by watching the news coverage and reading his paper-work and then contacted the

-3-

prosecutor's office and agreed to testify against him; I asked Beal did Billie actually confess and Beal started "laughing" and said no he never confessed but I was trying to get a lesser sentence;

5. In December 2016 I transfered [sic] from Brookes Facility where I was with Beal, and rode in to Muskegon Correction Facility with Billie McKinney;

6. I told Billie what Beal told me, and Billie asked me would I be willing to give him an affidavit regarding the conversation I had with Beal, I said yes, and a Paralegal spoke with me and drafted the affidavit.

The trial court denied defendant's successive motion for relief from judgment for failure to overcome the procedural threshold of MCR 6.502(G)(2), reasoning that defendant knew that Beal recanted his testimony in 2016 before defendant's first motion for relief from judgment because Scott informed him of Beal's recantation in December 2016.

Defendant now appeals.

## II. DISCUSSION

Defendant asserts that his successive motion for relief from judgment is not barred because he presented new evidence not discovered before his first motion for relief from judgment. We agree.

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion[.]" *People v Swain (On Remand)*, 288 Mich App 609, 628; 794 NW2d 92 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008), or it makes an error of law, *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006). Findings of fact are reviewed for clear error. *People v McSwain*, 259 Mich App 654, 681; 676 NW2d 236 (2003). "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted).

Defendants are only entitled to file one motion for relief from judgment. MCR 6.502(G)(1). An exception to this rule is found in MCR 6.502(G)(2)(b), which states that "[a] defendant may file a second or subsequent motion based on . . . a claim of new evidence that was not discovered before the first such motion was filed." If a defendant meets the threshold to overcome the procedural bar of MCR 6.502(G)(2), the trial court may consider his successive motion under MCR 6.508(D). Generally, a defendant presenting new evidence is entitled to a new trial when:

(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted).]

The *Cress* test "does not apply to the procedural threshold of MCR 6.502(G)(2), as the plain text of the court rule does not require that a defendant satisfy all elements of the test." *People v Swain*, 499 Mich 920, 920 (2016).

The trial court concluded that Beal's affidavit was not new evidence because defendant learned from Scott in December 2016 that Beal told Scott that he lied about defendant confessing to him. Defendant contends that the trial court committed clear error when it made the factual finding that defendant learned in December 2016 that Beal recanted that defendant confessed to him. In support of this argument, defendant asserts that an equally plausible reading of Scott's affidavit is that Scott "rode in" on a bus to the Muskegon Correctional Facility where defendant was already residing, and only encountered him in the facility at some point between December 2016 and June 2017. We disagree that this is an equally plausible reading of Scott's affidavit, which instead naturally reads that Scott told defendant about Beal when he rode in the same bus as him in December 2016. However, despite disagreeing with defendant regarding the ambiguity of Scott's affidavit, we reverse without reference to this purported ambiguity.

The trial court's decision to deny defendant's successive motion was premised on the timing of Scott's affidavit without acknowledging that Scott's and Beal's affidavits do not express the same facts. In Scott's affidavit, Scott avers that Beal told him that defendant never actually confessed to Beal and that Beal was only trying to get a lesser sentence by working with the prosecution. Beal did not aver in his 2021 affidavit that defendant never confessed to him. Instead, he averred that he convinced defendant to write a letter to his girlfriend to create a false alibi; that he told defendant what to write in the letter; and that when Beal recorded defendant making inculpatory statements on a recording device, the speaker actually was a third party present in the room with Beal and defendant who was pretending to be defendant. Neither of these statements is an outright acknowledgment that defendant never confessed to Beal, as Scott avers in his affidavit. Therefore, even with Scott's affidavit, defendant did not discover that Beal admitted to these statements about the letter and recorded conversation until 2021, which was several years after his first motion for relief from judgment.

The only case addressing MCR 6.502(G)(2) that the trial court cited was *Swain*, 288 Mich App at 634. However, that case is distinct from this case in several respects. First, unlike the witnesses in *Swain*, Beal testified at trial against defendant. See *id*. The *Swain* witnesses had no testimony to recant, whereas in this case, Beal testified at trial, and defendant only discovered in 2021 that Beal averred about the context of the letter and the recorded conversation. Second, in *Swain*, the defendant did not learn about the testimony of the witnesses from a third party. Instead, the defendant's own personal knowledge informed her belief that the witnesses could corroborate her testimony. The defendant said as much at her trial. *Id*. In this case, defendant first learned that Beal may be willing to testify that he lied at trial because a third party informed defendant of that in December 2016, but defendant did not receive Beal's affidavit until 2021. Third, the *Swain* witnesses' testimonies remained the same as when the defendant expressed at trial that they could corroborate her story. *Id*. at 617, 634. In contrast, Beal expressed a willingness to recant part of his trial testimony. Further, Beal's affidavit did not contain the same statements that Scott averred that Beal said to him.

Even to the extent that defendant learned from Scott that Beal confessed to him about lying before he filed his first motion for relief from judgment, Beal's affidavit was new evidence because

Scott's affidavit was not admissible in 2016. Scott's affidavit averring that Beal said that defendant did not confess to him and that Scott admitted to lying to get a lesser sentence would be inadmissible as hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible except as provided by the Michigan Rules of Evidence. MRE 802. If defendant presented Scott's affidavit at the first motion for relief from judgment, it would have been rejected as hearsay because the affidavit asserted statements that Beal told Scott for the purpose of proving that Beal lied about defendant at trial. Defendant did not receive admissible evidence regarding Beal's testimony until October 2021 when Beal himself signed an affidavit averring that he convinced defendant to write the letter to his girlfriend, told defendant what to write in the letter, and recorded an individual impersonating defendant.

In sum, defendant's successive motion for relief from judgment was not procedurally barred by MCR 6.502(G)(2) because defendant presented newly discovered evidence concerning the letter that defendant wrote to his girlfriend and the recorded conversation between Beal and defendant. Although some information concerning Beal's willingness to recant his testimony that defendant confessed to him was known by defendant before the first motion for relief from judgment, this information was distinct from the testimony that Beal ultimately averred and was not admissible in the trial court.

## III. CONCLUSION

We reverse and remand to the trial court for consideration of defendant's successive motion for relief from judgment.[2] We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Michael J. Riordan
/s/ Kathleen A. Feeney

---

[2] We express no opinion on the prosecution's alternate argument in this Court that defendant failed to show "actual prejudice" for the purposes of MCR 6.508(D), as the trial court, on remand, may address that issue in the first instance.