*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

EDDIE LEE SMITH,

       Defendant-Appellant.

UNPUBLISHED
January 22, 2025
2:44 PM

No. 366923
Kent Circuit Court
LC Nos. 10-012837-FC;
          10-012838-FC

Before: M. J. KELLY, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

In 2010, defendant pleaded no contest to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b), and one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). Defendant's convictions required him to register as a sex offender for life under the Michigan Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. See MCL 28.725(13). This Court denied defendant's applications for leave to appeal, first in 2012 and again in 2014.[1] In 2023, the trial court denied defendant's third successive motion for relief from judgment. Defendant now appeals by leave granted,[2] arguing that he is entitled to immediate removal from the sex offender registry because it is an unconstitutional ex post facto punishment to require him to register under the 2021 SORA. For the reasons set forth in this opinion, we affirm.

---

[1] *People v Smith*, unpublished order of the Court of Appeals, entered August 1, 2012 (Docket No. 310754); *People v Smith*, unpublished order of the Court of Appeals, entered September 4, 2014 (Docket No. 323098).

[2] *People v Smith*, unpublished order of the Court of Appeals, entered November 16, 2023 (Docket No. 366923). We granted defendant's application "limited to the issue whether defendant is entitled to be removed from the sex offender registry" and denied it in all other regards "because defendant has failed to establish that the trial court erred in denying the successive motion for relief from judgment" pursuant to MCR 6.502(G). *Id*.

In April 1995, defendant had sexual intercourse with his stepdaughter, who was 15 years old at the time. In June 2010, defendant's biological daughter, who was 13 years old at the time, was visiting defendant at his house when defendant placed his hands on top of her shorts and "rubb[ed] her vaginal area." In 2010, defendant was charged in separate files for both incidents. After pleading no contest to the CSC-I and CSC-II charges, defendant was sentenced to 15 to 30 years in prison for the CSC-I conviction and 3 to 15 years in prison for the CSC-II conviction. Defendant's CSC-I conviction classified him as a Tier III offender under SORA and required him to register as a sex offender for life. See MCL 28.722(a)(*iii*)(B); MCL 28.725(13).

After his two prior unsuccessful attempts to appeal, in June 2023, partially pursuant to the Michigan Supreme Court's decision in *People v Betts*, 507 Mich 527, 574; 968 NW2d 497 (2021), which held that retroactive imposition of the 2011 SORA amendments violated the constitutional prohibition on ex post facto laws, defendant moved a third time for relief from judgment. The trial court denied the motion. As to defendant's removal from SORA, the trial court stated that *Betts* was inapplicable to defendant's situation. Defendant now appeals.

In his initial brief on appeal, defendant argued that, because he was registered under SORA on the basis of conduct that occurred in June 2010, in accordance with our holding in *People v Lymon*, 342 Mich App 46; 993 NW2d 24 (2022) (*Lymon I*), aff'd in part and vacated in part ___ Mich ___ (2024), the 2021 SORA cannot be applied retroactively to him because it would constitute an unconstitutional ex post facto law; therefore, defendant should be removed from SORA. The Michigan Supreme Court then issued *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685) (*Lymon II*), affirming in part and vacating in part our judgment in *Lymon I*. Subsequently, this Court issued *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957), in which it held that the 2021 SORA did not constitute criminal punishment for ex post facto purposes. In his supplemental brief, defendant argues that *Kiczenski* was wrongfully decided and requested that we call for a conflict panel under MCR 7.215(J)(2) as a result. We disagree.

We review "a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes . . . ." *Id*. at 628-629.

In 1994, the Michigan Legislature enacted SORA. See 1994 PA 295. The first version of SORA "created a confidential database accessible only to law enforcement" that "required persons convicted of certain sex offenses to register and notify law enforcement of address changes." *Betts*, 507 Mich at 533, citing MCL 28.725(1). Since its enactment, SORA has been amended by the Legislature several times to make the registry accessible to the public, require registrants to report further personal information, and establish "exclusion zones" for registrants. *Betts*, 507 Mich at 533-535 (quotation marks omitted). In 2011, the Legislature enacted "significant structural amendments" that "categorized registrants into three tiers on the basis of their offenses and based the length of registration on that tier designation." *Id*. at 535, citing MCL 28.722(k) and MCL 28.722(s) through (u), as amended by 2011 PA 17.

An ex post facto law is one that "(1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) *increases the punishment for a*

*crime*; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014) (emphasis added). Both the Michigan and United States Constitutions prohibit the enactment of ex post facto laws. See US Const, art I, § 10; Const 1963, art 1, § 10.

In July 2021, the Michigan Supreme Court issued an opinion holding that the retroactive application of the 2011 SORA violated "state and federal constitutional prohibitions on ex post facto laws." *Betts*, 507 Mich at 533. The Court engaged in a "two-step inquiry":

> First, this Court must determine whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the statute imposes a disability for the purpose of reprimanding the wrongdoer, the Legislature likely intended the statute to be a criminal punishment. However, if the statute imposes a disability to further a legitimate public purpose, the Legislature likely intended the statute to be a civil or regulatory remedy.
>
> If the Legislature intended to impose criminal punishment, the retroactive application of such a statute violates the ex post facto prohibitions, and the inquiry ends. However, if the Legislature intended to impose a civil or regulatory remedy, this Court must then consider whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. [*Id*. at 542-543 (quotation marks and citations omitted).]

The Court also stated that "the Legislature's manifest intent will be rejected only when a party challenging the statute provides *the clearest proof* that the statutory scheme is so punitive either in purpose or effect to negate the State's intention to deem it civil." *Id*. at 543-544 (quotation marks and citation omitted).

In regard to the first factor, the Court determined that "the Legislature likely intended SORA as a civil regulation rather than a criminal punishment," *id*. at 549, because "the Legislature's intent in enacting SORA was the promotion of public safety, a nonpunitive goal," *id*. at 548.

In regard to the second factor, the Court stated that in determining whether a defendant has satisfied the burden of providing "the clearest proof," "we do not examine individual provisions of SORA in isolation but instead assess SORA's punitive effect in light of all the act's provisions when viewed as a whole." *Id*. at 549. The Court considered each of the following factors from the United States Supreme Court's decision in *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963): (1) "whether SORA has been regarded in our history and traditions as a form of criminal punishment," *Betts*, 507 Mich at 550 (quotation marks and citation omitted); (2) "how the effects of the 2011 SORA are felt by those subject to it," *id*. at 554 (quotation marks and citation omitted); (3) "whether the 2011 SORA promotes the traditional aims of punishment: retribution and specific and general deterrence," *id*. at 556; (4) "whether the 2011 SORA has a rational connection to a nonpunitive purpose," *id*. at 558; and (5) "whether the regulatory means chosen are reasonable in light of the nonpunitive objective," *id*. at 559 (quotation marks and citation omitted).

Following its analysis of each factor, the Court concluded that the 2011 SORA: (1) "bears significant resemblance to the traditional punishments of banishment, shaming, and parole because of its limitations on residency and employment, publication of information and encouragement of social ostracism, and imposition of significant state supervision," *id*. at 553; (2) "imposed onerous restrictions on registrants by restricting their residency and employment, and it also imposed significant affirmative obligations by requiring extensive in-person reporting," *id*. at 556; and (3) promoted "the traditional aims of punishment" because it "aimed to protect the public through deterrence" and imposed retributive restrictions, *id*. at 558. The Court also concluded that, although the 2011 SORA sought "to further the nonpunitive purpose of public safety," *id*., it imposed excessive restraints, and the regulatory means chosen were unreasonable to further the nonpunitive objective, *id*. at 561-562. The Court ultimately held that "the 2011 SORA, when applied to registrants whose criminal acts predated the enactment of the 2011 SORA amendments, violates the constitutional prohibition on ex post facto laws." *Id*. at 574.

Following oral argument on the *Betts* defendant's application for leave to appeal, but before the *Betts* Court issued its opinion, "the Legislature enacted a series of amendments of SORA, effective March 24, 2021." *Id*. at 538, citing 2020 PA 295. The *Betts* Court did not consider or address the 2021 SORA amendments, stating that "[n]o party has asked—and we have therefore declined to consider—whether the retroactive application of any post-2011 SORA amendments violates constitutional ex post facto provisions." *Betts*, 507 Mich at 574 n 30.

In *Lymon I*, 342 Mich App at 69, this Court addressed the issue whether registration under the 2021 SORA constituted a "criminal punishment." By applying the same two-step inquiry used by the Court in *Betts*, this Court concluded that it did. *Id*. at 69-81.

First, this Court adopted the Michigan Supreme Court's holding in *Betts* that the Legislature intended SORA as civil regulation rather than a criminal punishment. *Id*. at 70. Second, as the Court did in *Betts*, this Court considered the *Mendoza-Martinez* factors, concluding that the 2021 SORA: (1) "continues to bear a significant resemblance to the traditional punishments of shaming and parole," *id*. at 75; (2) "imposes significant affirmative obligations on registrants by mandating upon pain of imprisonment that they report common life changes within a short period of time, sometimes in person and sometimes in a manner not specified in the statute," *id*. at 77; and (3) "promotes the traditional aims of punishment" because it aims "to protect the public through deterrence and because its restrictions support the aim of retribution . . . ," *id*. at 78.

This Court also concluded that the 2021 SORA "furthers the nonpunitive purpose of public safety," *id*. at 79, but continues to impose "excessive" restraints, "even though there were fewer restraints in the 2021 SORA than in the 2011 SORA," *id*. at 80. This Court ultimately held that "the 2021 SORA's aggregate punitive effect negates the Legislature's intention to deem it a civil regulation. As a result, requiring an individual to comply with the 2021 SORA imposes a criminal punishment on a registrant." *Id*. at 81.

On July 29, 2024, the Court issued its decision in *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685) (*Lymon II*); slip op at 1-2, affirming in part and vacating in part our judgment in *Lymon I*. The Court held that, first,

> [a]lthough the 2021 SORA bears a rational relation to its nonpunitive purpose and
> the Legislature has continued to express its intention that SORA constitute a civil

regulation, SORA resembles traditional methods of punishment, promotes the traditional aims of punishment, and imposes affirmative restraints that are excessive as applied to non-sexual offender registrants. Accordingly, we conclude that the 2021 SORA constitutes punishment as applied to non-sexual offenders. [*Id*. at ___; slip op at 30.]

The Court then held that "the punishment of SORA registration for non-sexual offenders . . . is grossly disproportionate and accordingly constitutes cruel or unusual punishment under the Michigan Constitution," *id*. at ___; slip op at 37, and that "the 2021 SORA constitutes cruel or unusual punishment as applied to non-sexual offenders," *id*. at ___; slip op at 38. Finally, the Court concluded that "we vacate the opinion of the Court of Appeals insofar as its conclusions went beyond the consideration of non-sexual offenders and affirm its judgment that defendant and other offenders whose crimes lacked a sexual component are entitled to removal from the sex-offender registry." *Id*. As to *sexual* offenders, the Court stated as follows:

Our opinion does not reach the question whether the 2021 SORA constitutes punishment as to sexual offenders—and, in fact, explicitly vacates the portion of the Court of Appeals opinion that so concluded. To the extent that portions of our *Mendoza-Martinez* analysis might be relevant to a later appeal that considers whether the 2021 SORA constitutes punishment as to sexual offenders, that relevance does not define the outcome of such a future challenge. The *Mendoza-Martinez* analysis is cumulative, and while some of our analysis here will be relevant to other circumstances, some will not. Perhaps the effects of the 2021 SORA as applied to sexual offenders are so punitive as to outweigh the Legislature's civil intent, and perhaps not. [*Id*. at ___ n ___; slip op at 30 n 20.]

Recently, this Court released its decision in *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 1, 7, in which the defendant was convicted of two counts of CSC-I in 1980, and addressed the question whether the 2021 SORA constituted cruel or unusual punishment as to *sexual* offenders convicted before its enactment. After analyzing the *Mendoza-Martinez* factors, this Court concluded that all five of the factors weighed against the 2021 SORA being considered punishment for sexual offenders, but most especially, Factors 4 and 5. *Id*. at ___; slip op at 7-12. This Court stated that, as to Factor 4 (whether the statute has a rational connection to a nonpunitive purpose),

[t]he analysis of this factor weighs more heavily against the 2021 SORA being punishment for sexual offenders. While still rational, an additional logical step was required in *Lymon* [*II*] to connect the non-sexual offenders to the prevention of sexual crimes. This additional step is obviously not needed when the initial offense is itself sexual, as it is here. As recognized in *Betts*, 507 Mich at 558: "The 2011 SORA, by identifying potentially recidivist sex offenders and alerting the public, seeks to further the nonpunitive purpose of public safety. Accordingly, given the low bar of rationality, the 2011 SORA is connected to a nonpunitive purpose." The same is true of the 2021 SORA. [*Id*. at ___; slip op at 9.]

As to Factor 5 (whether the statute is excessive with respect to its nonpunitive purpose), this Court stated that,

while denoting a non-sex offender as a 'sex offender' is not accurate and contributes to it being excessive, the opposite is true for the individual who, like defendant, *has* committed a sex offense. These less restrictive provisions under the 2021 SORA are a great deal less excessive when applied to sex offenders because they are precisely the offenders the Legislature established these regulations for in order to protect against future harm to victims, particularly the young and vulnerable.

It is important to remember that factor 5 "requires the Legislature to have made a '*reasonable*' choice; it does not require the Legislature to have 'made the best choice possible to address the problem it seeks to remedy.' " [*Lymon*, ___ Mich at ___]; slip op at 24, quoting *Smith* [*v Doe*], 538 US [84] at 105; 123 S Ct 1140[; 155 L Ed 2d 164 (2003)] (emphasis added). The 2021 SORA removed the student-safety zones, a key factor that had led to the *Betts* ruling of excessiveness. *Betts*, 507 Mich at 566. And the *Lymon* Court's consideration of this factor was heavily based on the restrictions being undeserved for non-sexual offenders. *Lymon*, ___ Mich at ___; slip op at 26-27. [*Id*. at ___; slip op at 11 (footnote omitted).]

In addition, the Court noted that,

with the removal of the most restrictive measures from the 2011 SORA, and viewing these restrictions as applied to defendant, a convicted sex offender, we conclude that the 2021 SORA is not excessive in light of the nonpunitive nature of the provisions. The statute no longer restricts where defendant can work or live, it does not require all reporting to be in-person, and the remaining restrictions afford police and the public with the tools to prevent, or at least detect, any future re-offending. Factor 5 weighs in favor of a finding that the restrictions are not punishment. [*Id*. at ___; slip op at 12 (citation omitted).]

This Court concluded that, "[l]imiting the class of offender to those with CSC-I convictions," the defendant failed to demonstrate by "the clearest proof that the 2021 SORA is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id*. at ___; slip op at 12 (quotation marks and citation omitted). We ultimately held that "the 2021 SORA does not constitute punishment as applied to CSC-I offenders" and that "there is no ex post facto violation" in the retroactive application of the 2021 SORA to the defendant, a sexual offender. *Id*. at ___; slip op at 13.

In the present case, the trial court's opinion and order denying defendant's removal from the SORA was issued before the Michigan Supreme Court's decision in *Lymon II* was released and before this Court published its decision in *Kiczenski*. Although the trial court did not have the opportunity to apply the facts of the present case to those cases, we "will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason." *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998). Defendant, who was convicted of CSC-I and CSC-II, is a sexual offender. Pursuant to *Kiczenski*, the 2021 SORA does not constitute punishment as applied to defendant and there is no ex post facto violation in the retroactive application of the 2021 SORA as to defendant. Therefore, we hold that the trial court did not abuse

its discretion by concluding that defendant was not entitled to removal from SORA.  See *Swain*, 288 Mich App at 628.

Affirmed.

/s/ Michael J. Kelly
/s/ Anica Letica
/s/ Randy J. Wallace