*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PATRICK KEVIN COLE,

Defendant-Appellant.

UNPUBLISHED
March 13, 2025
12:20 PM

No. 367504
Kent Circuit Court
LC Nos. 95-000783-FC; 95-
000789-FC

Before: N. P. HOOD, P.J., and BOONSTRA and FEENEY, JJ.

PER CURIAM.

Defendant, Patrick Kevin Cole, appeals by leave granted,[1] the trial court's denial of his motion for relief from judgment. In 1995, Cole pleaded guilty to two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b); and two counts of kidnapping, MCL 750.349. His convictions required him to register as a sex offender for life under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. See MCL 28.725(13). In 1996, Cole filed a delayed application for leave to appeal, which this Court denied. Our Supreme Court also denied a later application for leave to appeal. See *People v Cole*, 465 Mich 912 (1997). In June 2023, Cole moved for relief from judgment, arguing that he was entitled to removal from the SORA registry. In August 2023, the trial court denied Cole's motion for relief from judgment. We affirm.

## I. BACKGROUND

This case started with Cole abducting and raping two girls in separate incidents in February 1995. First, Cole abducted an eight-year-old girl from outside her apartment building, driving her to a different location, and raping her in early February 1995. He then dropped her off close to her home and "advised her not to tell anyone or that if he found out she did, he would kill her." Later that same month, Cole abducted a 16-year-old girl while she was walking in Grand Rapids, drove her to his home, raped her, and dropped her back off in the city. Police identified Cole after this

---

[1] *People v Cole*, unpublished order of the Court of Appeals, entered January 11, 2024 (Docket No. 367504).

second incident. Shortly afterward, police arrested Cole, and the prosecution charged him for both incidents. After pleading guilty to all charges, the trial court sentenced Cole to 30 to 50 years in prison for each conviction. His CSC-I conviction classified him as a Tier III offender under SORA and required him to register as a sex offender for life. See MCL 28.722(a)(*iii*)(B); MCL 28.725(13).

After a prior unsuccessful attempt to appeal, in June 2023, Cole moved for relief from judgment, partially pursuant to the Michigan Supreme Court's decision in *People v Betts*, 507 Mich 527, 574; 968 NW2d 497 (2021). *Betts* held that retroactive imposition of the 2011 SORA amendments violated the constitutional prohibition on ex post facto laws. See *id.* The trial court denied the motion, concluding that *Betts* was inapplicable to Cole's situation. Cole now appeals.

## II. LAW AND ANALYSIS

Cole argues that applying the 2021 SORA retroactively to him for his conduct in 1995 violates the Ex Post Facto Clause. Specifically, he argues that our holding in *People v Lymon*, 342 Mich App 46; 993 NW2d 24 (2022) (*Lymon I*), aff'd in part and vacated in part ___ Mich ___ (2024) (Docket No. 164685), required the trial court to remove the SORA registration requirement in his sentence. We disagree.

We review "a trial court's decision on a motion for relief from judgment for an abuse of discretion and its findings of facts supporting its decision for clear error." *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes . . . ." *Id.*

An ex post facto law is one that "(1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) *increases the punishment for a crime*; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014) (emphasis added). Both the Michigan and United States Constitutions prohibit the enactment of ex post facto laws. See US Const, art I, § 10; Const 1963, art 1, § 10.

The Michigan Legislature enacted SORA in 1994. See 1994 PA 295. The first version of SORA "created a confidential database accessible only to law enforcement" that "required persons convicted of certain sex offenses to register and notify law enforcement of address changes." *Betts*, 507 Mich at 533, citing MCL 28.725(1). Since its enactment, the Legislature has amended SORA several times to make the registry accessible to the public, require registrants to report further personal information, and establish "exclusion zones" for registrants. *Betts*, 507 Mich at 533-535 (quotation marks omitted). In 2011, the Legislature enacted "significant structural amendments" that "categorized registrants into three tiers on the basis of their offenses and based the length of registration on that tier designation." *Id.* at 535, citing MCL 28.722(k) and MCL 28.722(s) through (u), as amended by 2011 PA 17.

In July 2021, our Supreme Court held that the retroactive application of the 2011 SORA violated "state and federal constitutional prohibitions on ex post facto laws." *Betts*, 507 Mich at 533. The Court engaged in a two-step inquiry:

> First, this Court must determine whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the statute imposes a disability for the

purpose of reprimanding the wrongdoer, the Legislature likely intended the statute to be a criminal punishment. However, if the statute imposes a disability to further a legitimate public purpose, the Legislature likely intended the statute to be a civil or regulatory remedy.

If the Legislature intended to impose criminal punishment, the retroactive application of such a statute violates the ex post facto prohibitions, and the inquiry ends. However, if the Legislature intended to impose a civil or regulatory remedy, this Court must then consider whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. [*Id*. at 542-543 (quotation marks and citations omitted).]

The Court also stated that "the Legislature's manifest intent will be rejected only when a party challenging the statute provides *the clearest proof* that the statutory scheme is so punitive either in purpose or effect to negate the State's intention to deem it civil." *Id*. at 543-544 (quotation marks and citation omitted).

Regarding the first *Betts* factor, the Court determined that "the Legislature likely intended SORA as a civil regulation rather than a criminal punishment," *id*. at 549, because "the Legislature's intent in enacting SORA was the promotion of public safety, a nonpunitive goal," *id*. at 548.

Regarding the second factor, the Court stated that, in determining whether a defendant has satisfied the burden of providing "the clearest proof," "we do not examine individual provisions of SORA in isolation but instead assess SORA's punitive effect in light of all the act's provisions when viewed as a whole." *Id*. at 579 (quotation marks and citation omitted). The Court considered each of the factors from the United States Supreme Court's decision in *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963): (1) "whether SORA has been regarded in our history and traditions as a form of criminal punishment," *Betts*, 507 Mich at 550 (quotation marks and citation omitted); (2) "how the effects of the 2011 SORA are felt by those subject to it," *id*. at 554 (quotation marks and citation omitted); (3) "whether the 2011 SORA promotes the traditional aims of punishment: retribution and specific and general deterrence," *id*. at 556; (4) "whether the 2011 SORA has a rational connection to a nonpunitive purpose," *id*. at 558; and (5) "whether the regulatory means chosen are reasonable in light of the nonpunitive objective," *id*. at 559 (quotation marks and citation omitted).

After analyzing each factor, the Court concluded that the 2011 SORA: (1) "bears significant resemblance to the traditional punishments of banishment, shaming, and parole because of its limitations on residency and employment, publication of information and encouragement of social ostracism, and imposition of significant state supervision," *id*. at 553; (2) "imposed onerous restrictions on registrants by restricting their residency and employment, and it also imposed significant affirmative obligations by requiring extensive in-person reporting," *id*. at 556; and (3) promoted "the traditional aims of punishment" because it "aimed to protect the public through deterrence" and imposed retributive restrictions, *id*. at 558. Critically, the Court also concluded that, although the 2011 SORA sought "to further the nonpunitive purpose of public safety," *id*., it imposed excessive restraints, and the regulatory means chosen were unreasonable to further the nonpunitive objective, *id*. at 561-562. The Court ultimately held that "the 2011 SORA, when

applied to registrants whose criminal acts predated the enactment of the 2011 SORA amendments, violates the constitutional prohibition on ex post facto laws." *Id*. at 574.

Following oral argument on the *Betts* defendant's application for leave to appeal, but before the *Betts* Court issued its opinion, "the Legislature enacted a series of amendments of SORA, effective March 24, 2021." *Id*. at 538, citing 2020 PA 295. The *Betts* Court did not consider or address the 2021 SORA amendments, stating that "[n]o party has asked—and we have therefore declined to consider—whether the retroactive application of any post-2011 SORA amendments violates constitutional ex post facto provisions." *Betts*, 507 Mich at 574 n 30.

This Court addressed the 2021 SORA amendments in *Lymon I*, 342 Mich App at 69. There, we considered whether registration under the 2021 SORA constituted a "criminal punishment." By applying the same two-step inquiry used by the Court in *Betts*, we concluded that it did. *Id*. at 69-81.

First, this Court applied our Supreme Court's holding in *Betts* regarding the 2011 SORA amendments to conclude that the Legislature intended 2021 SORA as civil regulation rather than a criminal punishment. *Id*. at 70. Second, as the Court did in *Betts*, this Court considered the *Mendoza-Martinez* factors, concluding that the 2021 SORA: (1) "continues to bear a significant resemblance to the traditional punishments of shaming and parole," *id*. at 75; (2) "imposes significant affirmative obligations on registrants by mandating upon pain of imprisonment that they report common life changes within a short period of time, sometimes in person and sometimes in a manner not specified in the statute," *id*. at 77; and (3) "promotes the traditional aims of punishment" because it aims "to protect the public through deterrence and because its restrictions support the aim of retribution . . . ," *id*. at 78.

This Court also concluded that the 2021 SORA "furthers the nonpunitive purpose of public safety," *id*. at 79, but continues to impose "excessive" restraints, "even though there were fewer restraints in the 2021 SORA than in the 2011 SORA," *id*. at 80. This Court ultimately held that "the 2021 SORA's aggregate punitive effect negates the Legislature's intention to deem it a civil regulation. As a result, requiring an individual to comply with the 2021 SORA imposes a criminal punishment on a registrant." *Id*. at 81.

On July 29, 2024, the Michigan Supreme Court issued its decision in *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685) (*Lymon II*); slip op at 1-2, affirming in part and vacating in part our judgment in *Lymon I*. The Court held that, first,

> [a]lthough the 2021 SORA bears a rational relation to its nonpunitive purpose and the Legislature has continued to express its intention that SORA constitute a civil regulation, SORA resembles traditional methods of punishment, promotes the traditional aims of punishment, and imposes affirmative restraints that are excessive as applied to non-sexual offender registrants. Accordingly, we conclude that the 2021 SORA constitutes punishment as applied to non-sexual offenders. [*Lymon II*, ___ Mich at ___; slip op at 30.]

The Court then held that "the punishment of SORA registration for non-sexual offenders . . . is grossly disproportionate and accordingly constitutes cruel or unusual punishment under the

Michigan Constitution," *id*. at ___; slip op at 37, and that "the 2021 SORA constitutes cruel or unusual punishment as applied to non-sexual offenders," *id*. at ___; slip op at 38. Finally, the Court vacated "the opinion of the Court of Appeals insofar as its conclusions went beyond the consideration of non-sexual offenders and affirm[ed] its judgment that defendant and other offenders whose crimes lacked a sexual component are entitled to removal from the sex-offender registry." *Id*. As to *sexual* offenders, the Court stated as follows:

> Our opinion does not reach the question whether the 2021 SORA constitutes punishment as to sexual offenders—and, in fact, explicitly vacates the portion of the Court of Appeals opinion that so concluded. To the extent that portions of our *Mendoza-Martinez* analysis might be relevant to a later appeal that considers whether the 2021 SORA constitutes punishment as to sexual offenders, that relevance does not define the outcome of such a future challenge. The *Mendoza-Martinez* analysis is cumulative, and while some of our analysis here will be relevant to other circumstances, some will not. Perhaps the effects of the 2021 SORA as applied to sexual offenders are so punitive as to outweigh the Legislature's civil intent, and perhaps not. [*Id*. at ___ n ___; slip op at 30 n 20.]

Put differently, *Lymon II* left open the question of the constitutionality of 2021 SORA's retroactive application to sexual offenders. See *id.*

Recently, in *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957), this Court considered whether 2021 SORA constitutes cruel or unusual punishment as to *sexual* offenders. *Id*.; slip op at 1, 7. The defendant in *Kiczenski* was convicted of two counts of CSC-I. *Id.*; slip op at 1, 7. After analyzing the *Mendoza-Martinez* factors, this Court concluded that all five of the factors weighed against the 2021 SORA being considered punishment for sexual offenders, but most especially, the fourth and fifth factors (i.e., rational connection to a nonpunitive purpose, and whether the regulatory means chosen are reasonable in light of the nonpunitive objective). *Id*. at ___; slip op at 7-12. Regarding the fourth factor, we stated:

> [t]he analysis of this factor weighs more heavily against the 2021 SORA being punishment for sexual offenders. While still rational, an additional logical step was required in *Lymon* [*II*] to connect the non-sexual offenders to the prevention of sexual crimes. This additional step is obviously not needed when the initial offense is itself sexual, as it is here. As recognized in *Betts*, 507 Mich at 558: "The 2011 SORA, by identifying potentially recidivist sex offenders and alerting the public, seeks to further the nonpunitive purpose of public safety. Accordingly, given the low bar of rationality, the 2011 SORA is connected to a nonpunitive purpose." The same is true of the 2021 SORA. [*Id*. at ___; slip op at 9.]

Regarding the fifth factor, this Court stated that

> while denoting a non-sex offender as a 'sex offender' is not accurate and contributes to it being excessive, the opposite is true for the individual who, like defendant, has committed a sex offense. These less restrictive provisions under the 2021 SORA are a great deal less excessive when applied to sex offenders because they are

-5-

precisely the offenders the Legislature established these regulations for in order to protect against future harm to victims, particularly the young and vulnerable. [*Id.* at ___; slip op at 11.]

We concluded that, "[l]imiting the class of offender to those with CSC-I convictions," the defendant failed to demonstrate by "the clearest proof that the 2021 SORA is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* at ___; slip op at 12 (quotation marks and citation omitted). This Court ultimately held that "the 2021 SORA does not constitute punishment as applied to CSC-I offenders" and that "there is no ex post facto violation" in the retroactive application of the 2021 SORA to the defendant, a sexual offender. *Id.* at ___; slip op at 13.

Here, Cole filed his brief on appeal before the Michigan Supreme Court's decision in *Lymon II* and this Court's decision in *Kiczenski* were released. In *Lymon II*, ___ Mich at ___; slip op at 38, the Supreme Court vacated this Court's opinion in *Lymon I* "insofar as its conclusions went beyond the consideration of non-sexual offenders" and held that only "offenders whose crimes *lacked a sexual component* are entitled to removal from the sex-offender registry." In *Kiczenski*, ___ Mich at ___; slip op at 13, this Court held that "the 2021 SORA does not constitute punishment as applied to CSC-I offenders" and that "there is no ex post facto violation" in the retroactive application of the 2021 SORA as to sexual offenders. Cole, who was convicted of CSC-I, is a sexual offender. He therefore is not entitled to removal from the sex-offender registry. See *id.*

The trial court's opinion and order denying Cole's removal from SORA was issued before this Court issued its decision in *Kiczenski*. But we "will affirm a lower court's ruling when the court reaches the right result, albeit for the wrong reason." *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998). Accordingly, the trial court did not abuse its discretion by concluding that Cole was not entitled to removal from SORA. See *Swain*, 288 Mich App at 628.

We affirm.

/s/ Noah P. Hood
/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney

-6-